In re Jimmy Wayne SANDERS, Debtor.

**Robert H. WALDSCHMIDT,
Trustee, Plaintiff,**

**v.**

**Gladys SANDERS, Defendant.**

**Bankruptcy No. 97–00325–AT3–7.
Adversary No. 397–0145A.**

United States Bankruptcy Court,
M.D. Tennessee.

Sept. 18, 1997.

*MEMORANDUM*

ALETA A. TRAUGER, Bankruptcy Judge.

This matter came before the court upon the complaint of Robert H. Waldschmidt, Chapter 7 Trustee, to avoid and recover transfers made by the debtor, through his wife, to First American National Bank. The court finds that the elements of 11 U.S.C. § 547(b) have been satisfied and that the transfers are not excepted from avoidance under 11 U.S.C. § 547(c)(2). The transfers are recoverable pursuant to 11 U.S.C. § 550(a)(1) from Defendant Gladys Sanders, the person "for whose benefit such transfer[s] [were] made." Judgment, therefore, will be entered in favor of the Plaintiff.

I

The debtor, Jimmy Wayne Sanders, filed a bankruptcy petition under Chapter 7 on January 13, 1997. The Chapter 7 Trustee commenced this adversary proceeding on April 15, 1997, against the debtor's mother, Gladys Sanders. The Trustee seeks to avoid and recover transfers made to the benefit of Gladys Sanders within the one-year period preceding bankruptcy. The transfers were effected by checks payable to First American and drawn on the joint checking account of the debtor and his wife, Sandra Sanders. The checks were in payment of a $50,000 loan made by Gladys Sanders to the debtor. Sandra Sanders signed all the checks payable to First American that were honored within the one-year period preceding bankruptcy.

In reality, in late 1992 or early 1993, Gladys Sanders borrowed $50,000 from First American, which holds a first and second deed of trust on her home, in order to loan it to her son, the debtor. The debtor, through his wife, made the loan payments to First American in order to repay this obligation to his mother. There is no note evidencing the $50,000 loan from Gladys Sanders to the debtor.[1] Instead, the debtor verbally agreed

Howell & Fisher, PLLC, Robert H. Waldschmidt, Nashville, TN, for Plaintiff.

Trabue, Sturdivant & Dewitt, William R. O'Bryan, Jr., Ryan A. Kurtz, Nashville, TN, for Defendant.

1. The debtor's Schedule F lists Gladys Sanders as an unsecured creditor with a $42,500 claim that was incurred in November 1992. Gladys Sanders has not filed a proof of claim.

to make the monthly payments to First American in return for the loan proceeds, which he used to purchase a business, Quality Quick Cleaners.

The debtor owned Quality Quick Cleaners as a sole proprietor and initially made the payments to First American from his business account. Through another verbal agreement, the debtor "turned over" the business to a third party, John W. Horsley, Jr., in February or March 1995 and, thereafter, the debtor's wife began making the payments to First American from the personal joint checking account which had been utilized by the debtor and his wife for many years.[2] No other business debts were paid out of that personal account. Mr. Horsley apparently agreed to pay the other business debts. The business was ultimately foreclosed upon sometime prior to July 1996. The debtor filed a petition for relief under Chapter 7 of the Bankruptcy Code "primarily as a result of the accumulated obligations that had arisen from the ownership and operation of Quality–Quick Cleaners."[3] (Def.'s Pretrial Br. at 2.)

## II

A trial was held July 2, 1997. The parties presented evidence on two issues: (1) whether the transfers were "of an interest of the debtor in property," one of the elements of required proof under § 547(b), and (2) whether the transfers are excepted from avoidance under § 547(c)(2), the ordinary course of business defense. The parties do not dispute that all of the other required elements under § 547(b) are satisfied.[4] The

Trustee has the burden of proving by a preponderance of the evidence that the transfers were "of an interest of the debtor in property," while the Defendant has the burden of proving the elements of § 547(c)(2) by a preponderance. 11 U.S.C. § 547(g); *Logan v. Basic Distrib. Corp. (In re Fred Hawes Org., Inc.),* 957 F.2d 239, 242 (6th Cir.1992).

■ The Defendant argued at trial and in her post-trial brief that based on the Sixth Circuit case of *Arango v. Third National Bank (In re Arango),* 992 F.2d 611 (6th Cir.1993), the transfers from the joint account, which is held as tenants by the entireties by the debtor and his wife, were not "of an interest of the debtor in property." In *Arango,* the debtor exempted all property held as a tenant by the entirety and, thereafter, sought to avoid a creditor's lien on his survivorship interest in the exempted property pursuant to 11 U.S.C. § 522(f). The Sixth Circuit found that the debtor was entitled to exempt his interest in entireties property "to the extent that his interest is not subject to execution under Tennessee law." *Arango,* 992 F.2d at 614. Because the debtor's present possessory interest in entireties property was not subject to execution, it was exemptible. The debtor's survivorship interest, however, was subject to execution and, therefore, was not exemptible. Since the creditor's lien on the survivorship interest did not impair an exemption, it was not avoidable under § 522(f).

The Defendant relies on the following language of *Arango:*

---

**2.** The evidence presented at trial established that Sandra Sanders was not an owner of the business or active in its operations and was not obligated to Gladys Sanders on the loan. The debtor's Schedule H lists Mr. Horsley, d/b/a Quality Quick Cleaners, as a codebtor on the Gladys Sanders loan.

**3.** The debtor reported on his Schedule B that his personal property includes Quality Quick equipment and machinery valued at $50,000. The debtor listed his personal and business creditors on his bankruptcy schedules and listed Mr. Horsley as a codebtor on five debts, including the Gladys Sanders loan.

**4.** The parties stipulated that § 547(b)(2) and (3) are satisfied, but failed to stipulate or present

argument with respect to § 547(b)(1) and (4). The court presumes that the parties do not dispute that subsections (1) and (4) are also satisfied. The evidence clearly establishes that the payments to First American were "to or for the benefit of a creditor," Gladys Sanders. The cancelled checks introduced as stipulated Exhibit 1 establish that, within the one-year period preceding bankruptcy, twelve checks, each in the amount of $511.18 and payable to First American, were honored by SunTrust Bank on the joint checking account of the debtor and his wife. Gladys Sanders, as the mother of the debtor, is clearly an "insider," as defined in § 101(31)(A)(i).

Under Tennessee law, when husband and wife hold property together, they are presumed to hold it as tenants by the entirety unless the documents which evidence their ownership indicate that the property is held separately. Under tenancy by the entirety, the husband and wife *as a unit* have the right to the current use and enjoyment of the property. As individuals, they each possess a right of survivorship: if one spouse dies, then the other spouse takes the property in fee simple absolute. Each spouse may convey his or her right of survivorship without the consent of the other. However, the husband and wife's present right to use and enjoy the property may be transferred only by consent of both the husband and the wife. Therefore, a third party, such as a lien creditor, may own one spouse's right of survivorship without the consent of the other spouse, but a third party may not own a present possessory interest in the property without the approval of both spouses. Accordingly, a creditor of only one spouse may execute a judgment against only that spouse's right of survivorship but not against the spouse's present possessory interest.

Congress could have taken two main approaches in dealing with tenancy by the entirety. Congress could have excluded entireties property from the definition of the "legal or equitable" interests of the debtor in section 541(a)(1). Under this approach, the Arangos' present possessory interest in the entireties property would not be a part of [Mr.] Arango's individual bankruptcy estate because he and his wife, as a unit, but not as individuals, own the present possessory interest in their entireties property. Congress did not choose this approach. Instead, Congress implicitly defines all of [Mr.] Arango's interest in entireties property as property which is part of his individual bankruptcy estate, but exempts his interest in entireties property from his bankruptcy estate to the extent that his interest is not subject to execution under Tennessee law. *See* 11 U.S.C. § 522(b)(2)(B). Therefore, incorporating Tennessee law into 11 U.S.C. § 522(b)(2)(B), as required by that subsec-

tion, [Mr.] Arango's bankruptcy estate does not include his present possessory interest in property he holds as a tenant by the entirety, but his bankruptcy estate does include his right of survivorship in that property.

992 F.2d at 613–14 (citations omitted). Based on this language, the Defendant contends that the transfers to First American "came from the present possessory interest [in the joint bank account] held by the spousal 'unit'—not out of the debtor's survivorship interest." (Def's Post–Trial Br. at 6.) Therefore, argues the Defendant, the "present possessory interest is not 'an interest of the debtor in property,'" is exempt, and the "transfers cannot be subject to a preference action." (*Id.*)

The Defendant also argues that the transfers did not diminish the debtor's bankruptcy estate, except to the extent of the debtor's survivorship interest, which the debtor contends is valueless. Alternatively, the Defendant argues that the Trustee has failed to present evidence of the value of the debtor's survivorship interest "prior to the transfers compared to its value after the transfers" and that "[c]ontemplating such a futile exercise illustrates the lack of value the Debtor's right of survivorship has to the bankruptcy estate."

The Sixth Circuit's discussion of the diminution of the estate doctrine in two cases is helpful in determining whether the transfers were "of an interest of the debtor in property." *See McLemore v. Third Nat'l Bank (In re Montgomery)*, 983 F.2d 1389 (6th Cir. 1993); *Mandross v. Peoples Banking Co. (In re Hartley)*, 825 F.2d 1067 (6th Cir.1987). In *Hartley*, the Sixth Circuit adopted the earmark rule for purposes of determining whether an interest of the debtor had been transferred. Under that rule, "funds loaned to a debtor that are 'earmarked' for a particular creditor do not belong to the debtor because he does not control them." *Hartley*, 825 F.2d at 1069. Although the earmark rule has not been advanced by any party to this dispute, the diminution of estate doctrine that underlies the rule is relevant here. *See Schwinn Plan Comm. v. Transamerica Ins. Fin. Corp. (In re Schwinn Bicycle Co.)*, 200

**328**

B.R. 980, 994 (Bankr.N.D.Ill.1996) ("Although the requirement does not explicitly appear in § 547(b), a number of cases interpret the introductory paragraph of § 547(b) [which requires a 'transfer of an interest of the debtor in property'] to create a diminution of estate requirement."). That doctrine,

[i]n the context of transfers by third parties, ... asks whether the debtor controlled the property to the extent that he owned it and thus the transfer diminished the estate. "Where there is a question as to the debtor's ownership of the money, 'the court must determine whether the debtor had such an interest in the funds such that a transfer thereof would result in a diminution of the estate.'" *Commodity Exch. Servs. Co. v. The Cotton Bd. (In re Commodity Exch. Servs. Co)*, 67 B.R. 313, 316 (N.D.Tex.1986) (quoting *Hargadon v. Cove State Bank (In re Jaggers)*, 48 B.R. 33, 36 (Bankr.W.D.Tex.1985)). If the transfer diminishes the estate, the other creditors are injured because less remains for them to share. Although the doctrine developed under section 60 of the former Bankruptcy Act, the predecessor to section 547(b), courts have used the doctrine in cases arising under section 547(b) to determine whether the debtor owned the property in question.

*Id.* at 1070.

In *Montgomery*, the Sixth Circuit avoided under § 547(b) the debtor's payoff of unauthorized loans from Third National Bank with funds generated partly through a check kiting scheme. In finding that the debtor had an interest in the property acquired by kiting checks, the court emphasized that "[t]he real question here is whether the Debtor was actually able to exercise sufficient dominion and control over the funds to demonstrate an interest in property.'" *Montgomery*, 983 F.2d at 1395 (quoting *In re Smith*, 966 F.2d 1527, 1531 (7th Cir.), *cert.*

*dismissed*, 506 U.S. 1030, 113 S.Ct. 683, 121 L.Ed.2d 604 (1992)). The court answered that question affirmatively based on the following rationale:

Montgomery [the debtor] could have used the kited checks to buy a 40–foot yacht, just as he could have used them to pay off creditors other than Third National. This might have caused his house of cards to collapse sooner than it did, but the point is that Montgomery exercised significant control as long as the house of cards stood; Montgomery could decide, during that period, whether to pay off Third National rather than paying off one of his smaller creditors ... and using what was left over to buy a yacht.

Because the debtor "could have purchased a yacht or acquired some other assets instead of paying his debt," the assets in the estate at the time of bankruptcy were less than they could have been. *Smith*, 966 F.2d at 1536–37. "When a debtor effectively borrows *nonearmarked* funds and exercises control by using the funds to pay a preferred creditor over others, the estate has been diminished." *Id.* at 1537 (emphasis supplied).

*Id.*

■ Most analogous to this matter are cases that have used the diminution of the estate doctrine to determine whether prepetition transfers of exemptible property are preferential. In *Goldberg v. Torell (In re Rundlett)*, 149 B.R. 353 (Bankr.S.D.N.Y. 1993), the debtor transferred $130,000 to her sister prior to filing a bankruptcy petition. The Chapter 7 trustee initiated an avoidance action to recover the transfer. The defendant contended that the funds would have been exemptible if they had not been transferred and, therefore, they were protected from avoidance [5] The court disagreed based on the following analysis:

---

**5.** The Defendant here similarly argues that "the funds transferred ... would not have been available for distribution to creditors had the transfers not occurred.... [A]ny argument that these transfers diminished the value of the bankruptcy estate is without merit because a right of survivorship in a joint checking account possessed by the estate is valueless." (Def.'s Post–Trial Br. at 6.) The Sixth Circuit, however, has established

that the diminution of the estate doctrine is satisfied if the debtor controlled the property transferred "to the extent that he owned it and thus the transfer diminished the estate." *Hartley*, 825 F.2d at 1070. Based on the Tennessee law reiterated in *Arango*, the debtor's interest in the joint account is property of the estate. That interest, however, is exemptible to the extent it is "not subject to execution under Tennessee law." *Ar-*

Defendant argues that she was paid [$130,000] with exempt funds and therefore there was no diminution of the estate.... Even if all the [funds] qualified as exempt, defendant could not use the debtor's exemption claim as a defense to the trustee's action to recover a voidable preference. This court has held in this case that the debtor is entitled to claim her exemption as of November 15, 1991, the date of the commencement of the bankruptcy case, because that is the controlling date for defining the exemption. When the debtor made the prepetition $130,000 payment to the defendant in September of 1991, she paid with funds that had not yet been claimed to be exempt. When a debtor chooses to transfer exemptible property to a creditor, the debtor is deemed to have chosen not to claim that property as exempt. *In re Richards,* 92 B.R. 369, 372 (Bankr. N.D.Ind.1988).

The argument that a debtor's prepetition payment to a creditor of exemptible property does not diminish the estate puts the cart before the horse. Under the Bankruptcy Code, exemptible property is property of the estate within the meaning of 11 U.S.C. § 541 until the debtor asserts successfully the right to the exemption.

> Pursuant to Code § 541, all property of the debtor becomes property of the estate upon the filing of a petition for relief; even property needed for a fresh start.... After the property comes into the estate, Code § 522(b) provides that notwithstanding § 541, an individual debtor may exempt certain property from the estate. The Bankruptcy Court would then have to determine what property may be exempted and what remains as property of the estate.

The district court in *In re Owen[ ],* 104 B.R. 929 (C.D.Ill.1989), concluded that the bankruptcy court erred in applying the "diminution of the estate" doctrine when it

held that transfers involving exempt property could not be avoided by the trustee as preferences. The district court said that contrary to the bankruptcy court's conclusion, the estate would benefit were the trustee to succeed in avoiding the debtor's transfer of the exemptible funds. Moreover, the opportunity to claim exemptions is personal to the debtor and is not available to a creditor as a defense to a preference action.

149 B.R. at 358 (citations omitted) (second omission in original) (quoting *In re Upright,* 1 B.R. 694, 702 (Bankr.N.D.N.Y.1979)); *see Fox v. Smoker (In re Noblit),* 72 F.3d 757, 759 (9th Cir.1995) (holding that transferees "do not have standing to raise [debtor's] homestead exemption as a defense against the trustee's avoidance action").

Similarly, the Bankruptcy Court for the Western District of Michigan held that a trustee may avoid and recover transfers of exempt or exemptible entireties property based on the following analysis:

> Within one year prior to the Debtor's bankruptcy filing, the Debtor and his non-debtor spouse jointly and voluntarily conveyed their entireties property, the marital home and the recreational camp, to the Defendant Parents and Defendant Son respectively. The entireties estates were thereby terminated and the Debtor and his spouse no longer held any remaining interest in the property.
>
> The major argument of the Defendants is that because creditors could not have executed upon the entireties property had the transfers not been made, creditors are not, and could not be, prejudiced by the transfers; *ergo* "no harm-no foul": The Defendants' argument is based upon hypothetical facts that do not exist. Conveyances of property have legal ramifications. This court therefore must analyze the law in accordance with what happened rather than what might have happened.

*ango,* 992 F.2d at 614. The funds in the debtor's joint checking account, except to the extent of the debtor's survivorship interest, would not be available for distribution to creditors, once exempted. Likewise, if the transfers had not been made and the funds remained in the joint account as of the petition date, they would be

exemptible and, once exempted, they would be available for distribution to creditors only to the extent of the debtor's survivorship interest. This, however, does not protect the funds from avoidance. Once the funds were transferred to First American, they were no longer subject to the debtor's wife's entireties interest.

. . . .

The cases which adopt a "no harm-no foul" result seem to ignore the possible rights that creditors have in potentially exempt property. Consider the following illustrations:

(1) The day prior to the filing of a debtor's bankruptcy filing, the debtor and a non-debtor spouse voluntarily transfer exemptible entireties property to a third person, either to satisfy an antecedent debt or as a gift without consideration. The debtor then elects federal exemptions and claims property as exempt under 11 U.S.C. § 522(d)(1) and (5). If the trustee is unable to avoid the transfer of entireties property, does the transfer of the entireties property result in "no harm-no foul"?

(2) Within a year of a bankruptcy filing, the debtor and a non-debtor spouse transfer entireties property to an insider, either in payment of antecedent debt or without consideration. At the time of the transfer, creditors exist which hold joint claims against the debtor and the non-debtor spouse. Is the trustee prohibited from seeking to avoid the transfer?

(3) Before a bankruptcy filing, a debtor and a non-debtor spouse sell their entireties property and deposit the cash proceeds from the sale in a bank account. Shortly before the debtor's bankruptcy filing, the funds are used to pay an antecedent debt, or the funds are transferred without consideration, to a third person. May the trustee seek to recover the transfer or is it subject to a "no harm-no foul" analysis?

In the first illustration, the trustee should not be prohibited from seeking to avoid the transfer. The exemptible entireties property under state law has been transferred away and, absent avoidance under 11 U.S.C. § [ ] 547(b) or § 548, the property would not become property of the estate under 11 U.S.C. § 541(a)(3). Therefore, under a "no harm-no foul" approach, creditors of the estate would lose their possible rights to the property. Other property exempted by the debtor under the federal exemptions would not be reachable by creditors. Absent an avoidance by the trustee of the transfer of entireties property, in effect, the debtor is able to exempt property under both state and federal law. This is prohibited.

In the second illustration, entireties property which is subject to claims of joint creditors has been transferred away. Absent avoidance of the transfer by the trustee, the property is not property of the estate; it is not available to be administered for the benefit of joint creditors. The Bankruptcy Code contemplates the administration of entireties property. Even assuming the joint creditors may seek to avoid the transfer in the state courts to reach the entireties property conveyed, such litigation is an "inadequate device" and "is no longer necessary." [*Michigan Nat'l Bank v. Chrystler (In re Trickett)*, 14 B.R. 85, 90 (Bankr.W.D.Mich.1981).] Further, in an instance when only *one* joint creditor takes action in the state courts, or in an instance where the net recoverable entireties property has a value less than the aggregate joint claims, the bankruptcy principle of equality of distribution will likely be defeated. The result would be that the *remaining* joint creditors would not receive a pro rata distribution with regard to their respective joint claims.

. . . .

In the third illustration, a no-harm, no-foul analysis might warrant the conclusion that the trustee would be precluded from seeking to recover the transfer as well. Assuming that there were no joint creditors and the debtor elected state exemptions, it might be argued that because creditors were unable to reach the property under state law, they are unable to reach the property in bankruptcy via the trustee's avoidance powers. Under Michigan law, disposition and conversion of entireties property to proceeds generally results in the dissolution of the exempt status. A limited exception exists when the proceeds are to be reinvested in other similar entireties property within a reasonable period of time. Absent a present intent to reconvert the proceeds to exempt entireties property, creditors of a single spouse may execute on that spouse's share of the entireties proceeds. Upon transfer of the entireties prop-

erty to a third person, the entireties estate is severed. It would be anomalous to hold that, while a creditor of a single spouse may seek to recover that spouse's share of the entireties proceeds for its benefit, a trustee may not attempt to recover the debtor's share of transferred entireties property for the benefit of all creditors.

Under Michigan law, when a tenancy by the entireties is severed, the spouses are generally each entitled to a one-half interest to the property as tenants in common. However, any claimed exempt status of the entireties property, or one spouse's claimed entitlement to a one-half interest, may be challenged by the showing that one spouse used individual finds, while insolvent, to reduce a mortgage debt (or increase the entireties estate) in an effort to place individual funds beyond the reach of creditors. A trustee should be permitted to pierce a claimed entireties exemption, notwithstanding any prepetition transfer of property, to recover the fraudulently transferred property, or value thereof, for the benefit of creditors. In this type of situation, the strict application of a no harm, no foul approach would defeat a trustee's recognized rights.

. . . .

A trustee's ability to seek avoidance of transfers of exempt entireties property must be treated correspondingly with the trustee's ability to avoid transfers of other types of exempt, or exemptible, property. No valid basis exists to mandate disparate results solely depending upon the type of exempt property voluntarily transferred by a debtor. Likewise, no distinction should be drawn based upon whether the trustee asserts a preferential transfer or a fraudulent conveyance has taken place. Rather, the correct focus, in each and every adversary proceeding, should be directed to whether the trustee is able to prove *all* requisite elements with respect to an asserted avoidance action.

. . . .

When a transfer of entireties property occurs by the voluntary act by a debtor and the non-debtor spouse, the debtor will be deemed to have made a conscious decision not to claim the property as exempt. The proper inquiry is not only what the debtor has transferred to a preferred creditor or donee but also what the creditor or donee has received at the expense of other creditors. When a debtor and his non-debtor spouse transfer entireties property, the transferee receives the debtor's interest in such property. Simultaneously with the voluntary transfer, the debtor waives the right to claim any present or future exemption. Therefore, a trustee's cause of action may arise for the benefit of creditors, to obtain the debtor's portion of the transferred property. In such an instance, all the debtor's creditors, whether they hold joint or several claims, should be entitled to share prorata the recovered property, or the value thereof, in accordance with their respective priorities under the distribution sections of the Bankruptcy Code.

*Lasich v. Estate of A.N. Wickstrom (In re Wickstrom)*, 113 B.R. 339, 346–52 (Bankr. W.D.Mich.1990) (citations and footnotes omitted); *see also Covey v. United Fed. Sav. & Loan Ass'n (In re Owen)*, 104 B.R. 929, 932 (C.D.Ill.1989) (" 'It is well settled that exempt property is property of the estate until the debtor asserts his right to the exemption. Therefore, a transfer of otherwise exempt property, which has been avoided under . . . § 547 . . . is brought into the bankruptcy estate by § 551.' " (omission in original) (quoting *In re Weis*, 92 B.R. 816, 820–21 (Bankr.W.D.Wis.1988))). *But see Kapila v. Fornabaio (In re Fornabaio)*, 187 B.R. 780, 782–83 (Bankr.S.D.Fla.1995) (disagreeing with *Wickstrom* in 11 U.S.C. § 548 action and finding that transfer of debtor's interest in homestead to wife was not avoidable based on Florida law that "homestead property cannot be fraudulently transferred").

The court finds that the transfers were "of an interest of the debtor in property." The evidence presented at trial establishes that the joint checking account, from which the funds were transferred to First American, was held by the debtor and his wife as tenants by the entirety. *See Griffin v. Prince*, 632 S.W.2d 532 (Tenn.1982). Both the debtor and his wife deposited their wages into the account.[6] The wife's interest in the

---

**6.** The debtor's wife earned more than the debtor in 1995 and 1996. This fact, however, is irrele-

funds before they were transferred to First American was protected under state law. If the funds had not been transferred and remained in the debtor's joint account, they would be exemptible, except to the extent of the debtor's survivorship interest. The funds, however, lost their tenancy by the entirety character when the wife and debtor voluntarily transferred them to First American. *Compare Mays v. Brighton Bank,* 832 S.W.2d 347, 351 (Tenn.Ct.App.) (determining that funds cease to be tenancy by the entirety property upon withdrawal from bank account, but when wife, acting as husband's agent, used the funds to acquire an asset, both husband and wife owned an interest in the asset), *permission to appeal denied* (Tenn.1992), *with Burt v. Edmonds,* 224 Tenn. 403, 456 S.W.2d 342, 345 (1970) (finding that upon sale of real property, held as tenants by the entirety, husband and wife held proceeds as tenants by the entirety). The funds, therefore, are not protected from avoidance. The court finds that, despite the wife's interest in the funds before they were transferred to First American, the funds transferred were "of an interest of the debtor in property." [7]

The Trustee has satisfied his burden of proof under § 547(b) by a preponderance of the evidence.

### III

The Defendant argues, in the alternative, that the transfers are exempt from avoidance under the ordinary course of business defense, which provides:

The trustee may not avoid under this section a transfer—

 . . . .

(2) to the extent that such transfer was—

(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs *of the debtor and the transferee;*

(B) made in the ordinary course of business or financial affairs *of the debtor and the transferee;* and

(C) made according to ordinary business terms . . . .

11 U.S.C. § 547(c)(2) (emphasis added).

◼ The first issue to be addressed under § 547(c)(2) is whether First American or Gladys Sanders was the "transferee." Until the end of the trial, the parties focused on whether the transfers were in the ordinary course of business as to the debtor and Gladys Sanders. This, however, was incorrect. While the transfers to First American are recoverable pursuant to § 550(a)(1) against the Defendant because she is "the entity for whose benefit such transfer[s] [were] made," the Bankruptcy Code does not designate such benefitting entity as one to which § 547(c)(2) should be applied. Instead, under § 547(c)(2), the focus must be on the debtor and First American Bank, the "transferee" who received the funds from the debtor's joint checking account. *See Clark v. Balcor Real Estate Fin., Inc. (In re Meridith Hoffman Partners),* 12 F.3d 1549, 1553–54 (10th Cir.1993) (focusing on debtor and finance company for purposes of § 547(c)(2) although one-year preference period applied

---

vant. *See Mays v. Brighton Bank,* 832 S.W.2d 347, 350 (Tenn.Ct.App.) ("A result of having [a tenancy by the entirety] account is that any and all funds deposited in it are owned by each party completely, as if each party were the sole account holder. This degree of ownership is found without regard to the source of the funds." (citation omitted)), *permission to appeal denied* (Tenn.1992).

7. Arguably, the avoidable transfers must be viewed as initiating with the debtor, who transferred an interest in his wages to his wife by depositing them into the joint checking account. *See O'Neal v. Southwest Mo. Bank (In re Broadview Lumber Co.),* 168 B.R. 941, 962–63 (Bankr. W.D.Mo.1994) (permitting trustee to recover from wife, as a mediate transferee, deposits of

debtor's funds made by debtor's president into his and wife's joint checking accounts), *aff'd,* 118 F.3d 1246 (8th Cir.1997); *Noonan v. Rauh (In re Rauh),* 164 B.R. 419, 423–24 (Bankr.D.Mass. 1994) (finding that transfers of the debtor's interest occurred when he created joint tenancy accounts, not when his wife withdrew funds from accounts), *amended on other grounds by* 119 F.3d 46 (1st Cir.1997). In turn, his wife reduced the balance he owed to his mother. Under this scenario, the Trustee might also be required to avoid the deposits of the debtor into the joint account, to the extent his wife obtained an interest in the funds. While this requirement would not render the transfers to First American unavoidable, it would add a layer to the avoidance process that the court finds unnecessary.

because debtor's payments to finance company benefitted an insider), *cert. denied*, 512 U.S. 1206, 114 S.Ct. 2677, 129 L.Ed.2d 812 (1994); *Gosch v. Burns (In re Finn)*, 909 F.2d 903, 905–07 (6th Cir.1990) (focusing on debtor and credit union for purposes of applying § 547(c)(2) in adversary proceeding commenced against an insider who cosigned and guaranteed credit union loan and who benefitted from debtor's payments to the credit union). *See generally Patterson v. Shumate*, 504 U.S. 753, 766, 112 S.Ct. 2242, 2251, 119 L.Ed.2d 519, 532 (1992) (Scalia, J. concurring) ("[C]onsistency of usage within the [Bankruptcy Code] ... is to be presumed."); *United States v. Ron Pair Enters.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290, 298 (1989) ("[W]here ... the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.'" (quoting *Caminetti v. United States*, 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442, 452 (1917))).

In applying § 547(c)(2), subsection (A) requires that the transfer be "in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee." Courts have developed two approaches for interpreting this subsection. Under the first approach, courts consider the debtor's and the transferee's businesses separately. Under the second approach, courts focus on the business between the debtor and the transferee. The majority of courts, including the Sixth Circuit, appear to have adopted the latter. *See Waldschmidt v. Ranier (In re Fulghum Constr. Corp.)*, 872 F.2d 739, 743 (6th Cir. 1989); *Fitzpatrick v. Central Communications & Elecs., Inc. (In re Tennessee Valley Steel Corp.)*, 203 B.R. 949, 953–54 (Bankr. E.D.Tenn.1996).

The Sixth Circuit has established that subsection (B), "[t]he subjective prong[,] ... requires proof that the debt and its payment are ordinary in relation to other business dealings between *that* creditor and *that* debtor." *Fred Hawes Org., Inc.*, 957 F.2d at 244. In applying subsection (B), courts consider several factors, " 'including timing, the amount and manner a transaction was paid and the circumstances under which the

transfer was made.'" *Id.* (quoting *Yurika Foods Corp. v. United Parcel Serv. (In re Yurika Foods Corp.)*, 888 F.2d 42, 45 (6th Cir.1989)).

The Sixth Circuit has established that subsection (C) of § 547(c)(2) is "[t]he objective prong." *Fred Hawes Org., Inc.*, 957 F.2d at 244. Under subsection (C), " 'ordinary business terms' means that the transaction was not so unusual as to render it an aberration in the relevant industry." *Luper v. Columbia Gas of Ohio, Inc. (In re Carled, Inc.)*, 91 F.3d 811, 818 (6th Cir.1996).

At trial, the court expressed concern that the parties were focusing on the "course of business" between the debtor and Gladys Sanders instead of between the debtor and First American. The Defendant was given an opportunity to present additional evidence and file a post-trial brief. The Defendant, however, introduced scant evidence regarding "the ordinary course of business or financial affairs of the debtor and the transferee" (First American), as required by § 547(c)(2). Also, the Defendant decided not to address the § 547(c)(2) issue in her post-trial brief. (Def.'s Post–Trial Br. at 1.)

■ The evidence presented by the Defendant does not satisfy § 547(c)(2). The loan from First American to Gladys Sanders was facilitated by the debtor, who was an employee of First American at the time. The debtor contacted First American, helped his mother complete the necessary loan application, and attended the loan closing with his mother. The First American note is secured by Gladys Sanders' home and Gladys Sanders is the sole obligor on the note. The debtor is neither an obligor nor guarantor on the First American note, but he received the loan proceeds by way of an oral agreement with Gladys Sanders. Under that agreement, the debtor received $50,000 and agreed to make the payments on the First American note. The debtor used the loan proceeds to acquire Quality Quick Cleaners and, prior to February or March 1995, he made the structured payments on the First American note through automatic withdrawals from his business account. After he "turned over" his business, the debtor, through his wife, made timely payments on the First American note

by checks drawn against their personal, joint checking account. No other business debts were paid through that personal account and a significant amount of the debtor's business obligations remain unpaid. The purpose of preferring only the Gladys Sanders loan was to make sure the debtor's mother did not lose her house. Based on these facts, the court cannot find that the elements of § 547(c)(2)(A) or (B) have been satisfied by a preponderance of the evidence.

 Application of the ordinary course of business defense also is not supported by the purpose of § 547(c)(2), which "is to leave undisturbed normal financial relations, because it does not detract from the general policy of the preference section to discourage unusual action by either the debtor or his creditors during the debtor's slide into bankruptcy." S.Rep. No. 989, 95th Cong., 2d Sess. 88 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5874. The Sixth Circuit recently explained the purpose of § 547(b) and (c)(2) as follows:

> The preference rule aims to ensure that creditors are treated equitably based on the theory that "[u]nless the favoring of particular creditors is outlawed, the mass of creditors of a shaky firm will be nervous, fearing that one or a few of their number are going to walk away with all the firm's assets; and this fear may precipitate debtors into bankruptcy earlier than is socially desirable." *In re Tolona Pizza Prods. Corp.*, 3 F.3d 1029, 1032 (7th Cir.1993) (citations omitted). *See also* H. Rep. No. 595, 95th Cong., 1st Sess. 177–78 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6138 (Congress intended to discourage creditors "from racing to the courthouse to dismember the debtor during his slide into bankruptcy" and to further "the prime bankruptcy policy of equality of distribution among creditors"). However, "the ordinary course exception to the preference rule is formulated to induce creditors to continue dealing with a distressed debtor so as to kindle its chances of survival without a costly detour through, or a humbling ending in, the sticky web of bankruptcy." *Fiber–Lite Corp. v. Molded Acoustical Prods., Inc. (In re Molded*

*Acoustical Prods., Inc.),* 18 F.3d 217, 219–20 (3d Cir.1994) (citations omitted).

*Carled, Inc.,* 91 F.3d at 815 (alteration in original); *see Brown v. Shell Canada Ltd. (In re Tennessee Chem. Co.),* 112 F.3d 234, 238 (6th Cir.1997) ("[T]he 'ordinary course of business' exception is intended to cover precisely the type of situation now before us, allowing suppliers and other furnishers of credit to receive payment within the course that has developed in the commercial relationship between the parties unless substantial deviations from established practices occur."). Prior to the debtor's bankruptcy filing, the debtor, through his wife's use of their joint checking account, preferred the obligation owing to Gladys Sanders, an insider, while a significant amount of the other debts related to the debtor's business remained unpaid. The debtor and his wife testified that when the debtor turned over his business, they began making the payments on the First American note through their personal account because they did not want to see Gladys Sanders lose her home. The financial relationship between the debtor, Gladys Sanders, and First American cannot be considered normal. The debtor did not decide to pay any of his business obligations through his personal checking account, except for his mother's obligation to First American. This preference towards his mother's obligation, although understandable in human terms, is the type of unusual action that § 547(b) discourages and § 547(c)(2) does not protect. *Cf. Fulghum Constr. Corp.,* 872 F.2d at 743–45 (finding that recurring, customary short-term advancements and repayments were in the ordinary course of business, especially where transactions were "a paradigmatic example of the type of transaction promoted by § 547(c)").

 The transfers to First American should be avoided. Pursuant to § 550(a)(1), the avoided transfers are recoverable from Gladys Sanders, "the entity for whose benefit such transfer[s] [were] made." The Plaintiff is entitled to judgment against Gladys Sanders in the amount of $6,134.16.

 The Pretrial Order listed as an issue whether the Plaintiff is entitled to prejudg-

ment interest. The parties did not address this issue at trial or in their briefs. An award of prejudgment interest on a preference recovery is in the sole discretion of the court. *See Montgomery,* 983 F.2d at 1396. In light of the Trustee's failure to pursue prejudgment interest, the court declines to award prejudgment interest.

### JUDGMENT

For the reasons stated in the Memorandum filed herewith, it is hereby **ORDERED** that the transfers to First American National Bank, which total $6,134.16, are avoided pursuant to 11 U.S.C. § 547(b), and shall be recovered from Defendant Gladys Sanders pursuant to 11 U.S.C. § 550(a)(1). Judgment is hereby **GRANTED** to Plaintiff Robert H. Waldschmidt, Trustee, in the amount of $6,134.16.