In the matter of CONNOLLY NORTH AMERICA, LLC, Debtor.

Mark H. Shapiro, Trustee, Plaintiff,

v.

Art Leather, Inc., Defendant.

Bankruptcy No. 01–57090.

Adversary No. 03–5070.

United States Bankruptcy Court, E.D. Michigan, Southern Division.

Dec. 23, 2008.

Robert A. Weisberg, Bloomfield Hills, MI, for Debtor.

Geoffrey T. Pavlic, Southfield, MI, for Plaintiff.

Mark H. Shapiro, Southfield, MI, pro se.

Judy B. Calton, Honigman Miller Schwartz & Cohn LLP, Detroit, MI, for Defendant.

## TRIAL OPINION

THOMAS J. TUCKER, Bankruptcy Judge.

In this preference case, the Chapter 7 Trustee seeks to avoid and recover from Defendant, Art Leather, Inc. ("Art Leather"), approximately $3.2 million in transfers. The Trustee's case is based on six pre-petition payments that the Debtor, Connolly North America, LLC ("CNA"), made to GE Capital Commercial Finance, Inc. ("GE Capital"). While the payments were made to GE Capital, allegedly they were made for the benefit of Art Leather.

The Court conducted a bench trial spread over nine days, amounting to the equivalent of roughly seven and one-half days of trial time. This opinion states the Court's findings of fact and conclusions of law. For the reasons stated below, the Court finds for Defendant Art Leather, and will enter judgment accordingly.

## I. Jurisdiction and venue

The Court has subject matter jurisdiction under 28 U.S.C. §§ 157(a) and 1334(b), and the United States District Court's Local Rule 83.50(a)(E.D.Mich.). This is a core proceeding under 28 U.S.C. § 157(b)(2)(F).

Venue is proper under 28 U.S.C. § 1409(a), and is not disputed.

## II. Procedural history and background facts

The Court finds the facts stated in this opinion based on a review of the parties' stipulations [1] and the evidence presented at trial.

Pre-petition, Art Leather sold leather goods to the Debtor CNA on account. On February 3, 1999, Art Leather entered into a Factoring Agreement with GE Capital, under which Art Leather sold to GE Capital certain of Art Leather's accounts receivable from CNA.[2] Under the Factoring Agreement, there were two types of accounts receivable: those that were within a credit limit established by GE Capital, called "Factor Risk Account Receivable;" and those that exceeded the credit limit, called "Client Risk Account Receivable." If CNA failed to pay in full a "Factor Risk Account Receivable" due only to CNA's financial inability to pay, GE Capital had no recourse against Art Leather for payment. However, if CNA failed to pay a Factor Risk Account Receivable for any other reason, GE Capital had full recourse against Art Leather for payment. GE Capital also had full recourse against Art Leather if CNA failed to pay, for any reason, any "Client Risk Account Receivable." [3]

On September 5, 2001, an involuntary petition for relief under Chapter 7 was filed against CNA. An order for relief under Chapter 7 was entered on December 17, 2001. The Chapter 7 Trustee eventually filed an adversary complaint against Art Leather seeking to avoid, as preferences, transfers from CNA to GE Capital during the ninety-day preference period totaling $9,806,722.59, and (2) to recover these funds from Art Leather.[4] The Chapter 7 Trustee later filed an amended complaint in which he added GE Capital as a Defendant.

GE Capital filed a motion to dismiss the claim against it, arguing that the two-year limitations period for avoidance actions under 11 U.S.C. § 546(a) [5] had expired two days before the Trustee filed his amended

---

1. The stipulations are contained in the Joint Final Pretrial Order (Docket # 104).

2. *See* Factoring Agreement, Plaintiff's Exhibit 1, at 2–3 ¶ 2. Plaintiff's trial exhibits will be cited in this opinion as "PX-___."

3. *Id.* at 3 ¶ 2.

4. The Trustee's original and amended complaints (Docket ## 1, 6) also stated fraudulent transfer claims, but the Trustee later abandoned those claims. *See Shapiro v. Art Leather, Inc. (In re Connolly North America, L.L.C.)*, 340 B.R. 829, 831 n. 4 (Bankr.E.D.Mich. 2006). This leaves only Count I, the preference count, and Count V, which seeks disallowance of Art Leather's claim based on 11 U.S.C. § 502(d).

5. Section 546(a) provides:

 (a) An action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of—
 (1) the later of— .
 (A) 2 years after the entry of the order for relief; or
 (B) 1 year after the appointment or election of the first trustee under section 702, 1104, 1163, 1202, or 1302 of this title if such appointment or such election occurs before the expiration of the period specified in subparagraph (A); or
 (2) the time the case is closed or dismissed.
 11 U.S.C. § 546(a)(1).

complaint. The Court ultimately entered a stipulated order dismissing with prejudice the amended complaint as to GE Capital only.[6]

The remaining defendant, Art Leather, moved for summary judgment, which the Court denied.[7] *Shapiro v. Art Leather, Inc. (In re Connolly North America, L.L.C.)*, 340 B.R. 829 (Bankr.E.D.Mich. 2006). The case was tried to the Court.

Subject to an acknowledged, partial defense noted below, the Trustee seeks avoidance of the following transfers made by the CNA to GE Capital during the preference period:

| Amount | Date of Transfer |
|---|---|
| $3,155,564.42 | 6/22/2001 |
| $2,435,721.21 | 7/03/2001 |
| $1,010,996.33 | 7/17/2001 |
| $2,465,092.26 | 7/20/2001 |

Total: $9,067,374.22 [8]

The parties agree that Art Leather is entitled to a "subsequent new value" defense under 11 U.S.C. § 547(c)(4), totaling $5,808,808.52.[9] The Trustee's avoidance-and-recovery claim remaining, then, is for a maximum principal amount of $3,258,565.63.

6. Docket # 22.

7. Docket # 88.

8. The parties agree that two other transfers made during the preference period, totaling $739,348.37, are subject to the "contemporaneous exchange" defense under 11 U.S.C. § 547(c)(1). These transfers were made on July 20, 2001 ($155,122.95) and on August 6, 2001 ($584,225.42).

9. Sections 547(c)(1), cited in the previous footnote, and 547(c)(4), state:
(c) The Trustee may not avoid under this section a transfer—
(1) to the extent that such transfer was—
(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous ex-

## III. Discussion

### A. Relevant statutory provisions

In order to avoid a transfer as a preference under Bankruptcy Code § 547, the Trustee has the burden of proving each of the elements of avoidability under § 547(b), by a preponderance of the evidence. *See* 11 U.S.C. '§ 547(g); *Jackson Purchase Production Credit Ass'n. v. Taylor (In re Taylor)*, 29 B.R. 5, 7 (Bankr. W.D.Ky.1983). Section 547(b) states the elements:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—
(1) to or for the benefit of a creditor;
(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
(3) made while the debtor was insolvent;
(4) made—
(A) on or within 90 days before the date of the filing of the petition; or
(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the

change for new value given to the debtor; and
(B) in fact a substantially contemporaneous exchange;
... [or]
(4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor-
(A) not secured by an otherwise unavoidable security interest; and
(B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor;
11 U.S.C. § 547(c).

time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b).[10]

There is no dispute in this case that each of the transfers at issue meet the requirements of subsections (2), (3), and (4) of § 547(b). Art Leather disputes elements (1) and (5), and argues that the Trustee failed to meet his burden of proving these elements.

■ Art Leather also raises two lines of defense to avoidability of the transfers under § 547(c)—the "ordinary course of business" defense under § 547(c)(2); and the "subsequent new value" defense under § 547(c)(4).[11] Art Leather must prove each of these defenses by a preponderance of the evidence. *See* 11 U.S.C. § 547(g).

If he avoids the transfers at issue, the Trustee claims, he can recover their value from Art Leather, even though the Debtor CNA made the transfers to GE Capital, not Art Leather. This is so, the Trustee claims, because Art Leather was "the entity for whose benefit" the transfers were made within the meaning of § 550(a)(1). Section 550(a) provides:

(a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—

(1) the initial transferee of such transfer **or the entity for whose benefit such transfer was made;** or

(2) any immediate or mediate transferee of such initial transferee.

11 U.S.C. § 550(a)(emphasis added).

Art Leather disputes that it is the entity for whose benefit the transfers were made, sometimes referred to as the "transfer beneficiary," and argues that the Trustee failed to meet his burden of proving so. And as noted above, Art Leather disputes the Trustee's § 547(b)(5) element, which the Court will discuss next.

**B. Section 547(b)(5)—the "more than" element**

**1. The law**

As noted above, one of the elements the Trustee must prove in order to avoid a transfer is that the transfer

. . .

(2) to the extent that such transfer was-

(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(C) made according to ordinary business terms;

11 U.S.C. § 547(c)(2).

---

**10.** Section 547 was amended in several ways by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), but the parties agree that those amendments do not apply to this adversary proceeding. Each Bankruptcy Code provision quoted in this opinion will be the version in effect before the BAPCPA amendments.

**11.** Section 547(c)(4) is quoted in footnote 9 of this opinion. Section 547(c)(2) states:

(c) The Trustee may not avoid under this section a transfer-

(5) ... enables such creditor to receive more than such creditor would receive if—

 (A) the case were a case under chapter 7 of this title;

 (B) the transfer had not been made; and

 (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b)(5).

■ This element, referred to by the Sixth Circuit as the " 'more than' test," "require[s] the bankruptcy court to construct a 'hypothetical Chapter 7 case,' i.e., to determine what the creditor would have received in a liquidation." *Still v. Rossville Bank (In re Chattanooga Wholesale Antiques, Inc.)*, 930 F.2d 458, 461 n. 1, 464 (6th Cir.1991). The test requires the Court to determine what distribution would be made in such a hypothetical Chapter 7 liquidation to the creditor who received the challenged transfer (or the creditor for whose benefit the transfer was made), assuming that the transfer had not been made. In a case such as this, where the transferee of the transfer (GE Capital), and the alleged transfer beneficiary (Art Leather), are both non-priority, unsecured creditors of the Debtor, the following rule applies:

> Unless the estate is sufficient to provide a 100% distribution, any unsecured creditor ... who receives a payment during the preference period is in a position to receive more than it would have received under a Chapter 7 liquidation.

*Id.* at 465 (citation omitted).

■ In this case, then, the Trustee bears the burden of proving that the non-priority unsecured creditors in the hypothetical Chapter 7 liquidation case would receive less than a 100% distribution. Of course, that is what happens in the vast majority of bankruptcy cases, for "[a]n unsecured creditor's claim against a bankrupt debtor will rarely be worth one hundred cents on the dollar." *T.B. Westex Foods, Inc. v. Federal Deposit Insurance Corp. (In re T.B. Westex Foods, Inc.)*, 950 F.2d 1187, 1192 (5th Cir.1992). But that is not always so, and where, as here, the defendant does not concede the § 547(b)(5) element, the Trustee must prove it.

■ In determining whether the unsecured creditors GE Capital and Art Leather would receive a 100% distribution in the hypothetical Chapter 7 liquidation under § 547(b)(5), the Court must first consider the liquidation value of the assets that were in the bankruptcy estate when the bankruptcy petition was filed, and to add to that the value of the allegedly preferential transfers that the Trustee seeks to avoid. On the liability side, the Court must determine the amount of allowable claims against the estate as of the petition date. Because the § 547(b)(5) analysis requires the Court to assume that the allegedly preferential transfers at issue had not been made, the amount or value of those transfers must be added to the allowable claims of the transferee, in this case GE Capital.

■ Sixth Circuit case law requires the Court to make two other adjustments to the allowable claims in the hypothetical Chapter 7 liquidation. First, "any administrative expenses incurred during the pendency of the bankruptcy proceeding should be included in the determination." *Neuger v. United States of America (In re Tenna Corp.)*, 801 F.2d 819, 823 (6th Cir.1986). Second, in any case that began as a Chapter 11 case, any "post-petition debt incurred" during the reorganization should not be included in the § 547(b)(5) determination. *Id.*

### 2. The Trustee's § 547(b)(5) proof

#### a. Jeffrey Divian's opinions

At trial the Trustee sought to prove the § 547(b)(5) element of his case through the testimony of Jeffrey Divian, a Certified Public Accountant.[12] The Trustee offered Divian's opinions, as expert opinions, about whether the Debtor's estate would provide a 100% distribution to unsecured creditors. Divian opined that the unsecured creditors in the CNA bankruptcy case will receive less than a 100% distribution. He further testified that "with the assets and claims that the Trustee holds currently that distribution is approximately 19%."[13] Then he opined that it is possible that the unsecured creditor distribution ultimately could be "in the 60%, close to maybe at best 70% range," but "definitely less than 100%."[14]

#### b. The basis of Divian's opinions: assets of the estate

Divian's opinions were based entirely upon information he received from the Trustee and Trustee's counsel, regarding the assets of the estate and their value, and the amount of allowable unsecured claims against the estate.[15] In forming his opinions, Divian assumed the following list of estate assets:

| | | |
|---|---|---|
| 1. Cash on hand (as of the time of trial) | $ 2,927,115.91 | |
| 2. Transfers the Trustee seeks to avoid in this case | $ 3,258,565.63 | |
| 3. The estate's then-pending pre-petition claim against Plante & Moran, LLP for accounting malpractice | $ 5,000,000.00 | (maximum recovery) |
| Maximum Total Assets: | $11,185,681.54 [16] | |

Of these assets, Divian obtained the $2.9 million cash item from a report entitled "Form 2[,] Cash Receipts and Disbursements Record," which was marked as Plaintiff's Exhibit 40 but never admitted into evidence.[17] (Neither side ever moved to admit this exhibit into evidence.) This particular Form 2 "Cash Receipts and Disbursements Record" was not filed by the Trustee in the CNA bankruptcy case.[18]

Neither Divian nor any other witness presented by the Trustee testified to having any personal knowledge of the accuracy of the $2.9 million cash balance reflected in Plaintiff's Exhibit 40. Rather, Divian simply testified that the Trustee

**12.** The trial transcript volume containing Divian's testimony on this subject is on file at Docket # 142. This transcript volume will be cited as "T-___" in this opinion, and references to page numbers are to page numbers in the upper right-hand corner of the transcript page. Divian's testimony regarding the § 547(b)(5) element begins at T-71.

**13.** T-71.

**14.** *Id.* at 72-73.

**15.** The Plaintiff Trustee, Mark H. Shapiro, acted as his own counsel at trial, along with another member of his law firm, Geoffrey T. Pavlic. Mr. Shapiro did not testify at trial.

**16.** T-71-73.

**17.** T-84, 87-88; PX-40 at p. 24 (last page).

**18.** *See* T-90-93. As part of his response to the Court's question whether this particular Form 2 report was ever filed by the Trustee in the CNA case, Mr. Shapiro, the Trustee, stated (but did not testify) that this type and form of report is prepared by his staff and his office, periodically provided to the United States Trustee's office, and included in the Trustee's annual reports filed in the CNA bankruptcy case. T-90-91.

provided him with this document and that the Trustee represented to him that "these were the assets that he was holding," or rather, the Trustee may have told him that "here's the cash that I have on hand right now." [19]

In addition to the $2.9 million in cash, the $3.2 million claim against Art Leather in this preference action, and the unliquidated claim against Plante & Moran, Divian testified that "there could be additional claims that the trustee may pursue that may bring additional assets into the estate." [20] Divian testified later that "there possibly could be" other claims or actions owned by the estate not yet liquidated, but that he was "not aware of any." [21] The Trustee presented no other evidence regarding the existence or non-existence, or value, of any such additional claims.

As to the $5 million maximum value ascribed to the estate's claim against Plante & Moran, the only evidence presented about the value of that claim was Divian's testimony, that $5 million was the maximum value of the claim if the Trustee prevailed on it, and that this estimate was based on Divian's "discussions with the trustee and trustee's counsel." [22] Divian also testified that in his deposition taken two weeks before his trial testimony, he "threw out that number as a maximum amount based on discussions I've had with the trustee. Whether that's really a realistic dollar amount we haven't gone into detail on that." [23]

There was no other evidence presented at trial about the value of the accounting malpractice claim against Plante & Moran. Ultimately, after the trial in this case, the Court dismissed the Trustee's claim against Plante & Moran, with prejudice. That case was dismissed because the Court concluded that the Trustee and his counsel in that case were grossly negligent in failing to properly disclose and produce in discovery a substantial number of relevant documents requested by Plante & Moran. *See Shapiro v. Plante & Moran, LLP (In re Connolly North America, LLC),* 376 B.R. 161 (Bankr.E.D.Mich. 2007). The Trustee did not appeal that dismissal.

c. **The basis of Divian's opinions (con't.): allowable claims against the estate**

In giving his opinions under § 547(b)(5), Divian assumed that there were no allowable secured claims against the estate that had not already been paid in full. He further assumed that the allowable *unsecured* claims against the estate total $15,920,872.14, not including any increased unsecured claim that Art Leather would have for any amounts it paid to the estate on the Trustee's preference claim in this case.[24] Divian obtained this $15.9 million number from a five-page spreadsheet that he received from the Trustee, which was marked as Plaintiff's Exhibit 41.[25] That exhibit was never admitted into evidence; neither side ever moved its admission into evidence.

Divian testified that it was his understanding that Exhibit 41 listed the claims "that the trustee has determined to be— has categorized and has determined whether they are to be disallowed or al-

19. T–189–90.

20. T–72.

21. T–193–94.

22. T–72; *see also* T–199, 211.

23. T–211.

24. T–72–73, 88–89.

25. *Id.* at 88–89.

lowed." [26] This exhibit lists numerous claims, by claimant name, amount, and, among other things, in the far right column, the "Amount Allowed/General Unsecured." This column totals $15,920,872.14 for all claims. [27] The Trustee stated, in argument but not in testimony—the Trustee did not testify at trial—that he had already paid in full, or "substantially" in full, the $10,086,602.92 secured claim of Bank One, Michigan listed on Exhibit 41. So no allowed claim amount was listed for that creditor on the exhibit. [28]

It is clear from Divian's testimony that he had no personal knowledge whatsoever of the accuracy or completeness of the Trustee's claim data on Plaintiff's Exhibit 41, but rather, simply relied upon it as accurately stating the amount of allowable unsecured claims as $15.9 million. Divian testified that it was his understanding that the Trustee produced this document, and Divian testified that he relied on the Trustee to provide him with the correct information in this document. [29] Divian did not know the date of this document and did not know when it was last updated. [30] He did not have any part in determining whether the claims listed on Exhibit 41 should be considered allowed or disallowed. He did not even know who in particular actually made the determinations reflected on Exhibit 41:

> Q Now in terms of determining whether a claim amount was allowed or not allowed, again you don't know who in particular made those determinations?

> A I would assume the trustee or the trustee's counsel.

> Q Okay. And you don't know whether it was the trustee or the trustee's counsel, correct?

> A No, I do not know. [31]

No other witness testified to the accuracy or completeness of the list of allowable claims. Nor did the Trustee present any evidence about how the list of allowable claims in Exhibit 41 was determined. For example, no one testified about why any of the "allowable" claims on the list were valid claims, not susceptible to any objection.

### d. Divian's math

In reaching his opinions under § 547(b)(5), Divian simply took the asset and allowed claim numbers that he had been given by the Trustee and Trustee's counsel, assumed them to be accurate, and applied some very simple math to them. For example, he divided the cash-on-hand number of $2.9 million by the total allowable claims number of $15.9 million to reach his opinion that "with the assets and the claims that the Trustee holds, currently that distribution [to unsecured creditors] is approximately 19%." [32] Stated more precisely than Divian did, this calculation is: $2,927,115.91 ÷ $15,920,872.14 = $.183854 (18.38%).

Similarly, Divian also calculated a distribution percentage based on the following assumed assets and liabilities:

**26.** T–209.

**27.** PX–41.

**28.** T–94–95; PX–41 at 5 (claim # 94). Although this statement by the Trustee is not evidence that the Trustee can use to prove his case, because it was not in the form of testimony, it is an admission that Art Leather may use *against* the Trustee. *See generally* Fed. R.Evid. 105, 801(d)(2).

**29.** T–89, 208.

**30.** T–152–153.

**31.** T–153.

**32.** T–71–72.

Assets:

| | | |
|---|---|---|
| 1. | Cash on hand (as of the time of trial) | $ 2,927,115.91 |
| 2. | Transfers the Trustee seeks to avoid in this case | $ 3,258,565.63 |
| 3. | The estate's claim against Plante & Moran, LLP for accounting malpractice | $ 5,000,000.00 (maximum recovery) |
| | Total Assets: | $11,185,681.54 [33] |

Allowable unsecured claims (assumes no secured claims left to pay):

| | | |
|---|---|---|
| 1. | Allowable claims from PX–41: | $15,920,872.14 |
| 2. | Add-back the preference recovery from Art Leather in this case: | $ 3,258,565.63 |
| | Total Claims: | $19,179,437.77 [34] |

Using approximate, round numbers, Divian divided these total assets by the total claims to get a distribution to unsecured creditors in the "60–70%" range.[35] Stated more precisely than Divian did, the calculation is: $11,185,681.54 ÷ $19,179,437.77 = $.583212 (58.32%).

The foregoing analysis is the basis, and the only basis, for Divian's ultimate opinion that the unsecured creditors in the CNA bankruptcy case will receive less than a 100% distribution.

### 3. Discussion of the Trustee's § 547(b)(5) proof

■ Art Leather argues that the Trustee failed to meet his burden of proving the § 547(b)(5) element with respect to the transfers at issue. Art Leather argues that the only evidence presented by the Trustee on this issue—Jeffrey Divian's testimony—is neither admissible nor entitled to any weight. The Court agrees on both points, for the following reasons.

The opinions Divian gave—that the distribution to unsecured creditors in the CNA bankruptcy case currently would be

about 19%, and could possibly go as high as 60–70%, but would be less than 100%—are not admissible. The Trustee offered these opinions as expert opinions under Fed.R.Evid. 702. That rule provides:

> **If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert** by knowledge, skill, experience, training, or education, **may testify thereto in the form of an opinion or otherwise,** if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

(emphasis added).

This rule does not apply to the testimony, including opinions, that Divian gave. As described in Part III–B–2 of this opinion, Divian merely assumed several facts, including critical facts regarding the assets of, and allowable claims against, the CNA bankruptcy estate, that had been given to

---

**33.** T–71–73; PX–40.

**34.** T–71–73; PX–41.

**35.** T–73.

him by the Trustee and/or Trustee's counsel. Divian then applied very simple math (addition and division) to calculate claim distribution percentages. If the Trustee had established the underlying numerical facts, concerning the value of the estate's assets and the amount of allowable unsecured claims, with evidence, the Trustee could have presented the mathematical calculations without Divian or any other "expert" witness, by putting the calculations on a blackboard or a piece of paper or in a brief, and the Court could have performed those same calculations to verify the resulting percentage distribution to unsecured creditors. Divian's accounting expertise and knowledge, as a Certified Public Accountant, was not needed at all to do these calculations. Any reasonably (or even minimally) educated lay person could do them.

■ In the words of Evidence Rule 702, Divian presented no "scientific, technical, or other specialized knowledge" in expressing or explaining his opinions relating to § 547(b)(5). Simple addition and division does not qualify as "scientific, technical, or other specialized knowledge." Nor was there any such knowledge that would "assist the trier of fact to understand the evidence or to determine a fact in issue," as required under Evidence Rule 702. Thus, Divian's opinions relating to the Trustee's § 547(b)(5) element were not admissible under Evidence Rule 702 as expert opinion testimony. *See generally Andrews v. Metro North Commuter Railroad Co.*, 882 F.2d 705, 708 (2nd Cir.1989)(to be admissible under Fed.R.Evid. 702, an expert's testimony "must be directed to matters within the witness' scientific, technical, or specialized knowledge and not to lay matters which a jury is capable of understanding and deciding without the expert's

help;" opinion testimony that invades "an area in which the jury was not in need of expert assistance" is "not a proper subject for expert testimony" under Fed.R.Evid. 702.); *Scott v. Sears, Roebuck & Co.*, 789 F.2d 1052, 1055 (4th Cir.1986)("Rule 702 makes inadmissible expert testimony as to a matter which obviously is within the common knowledge of jurors because such testimony, almost by definition, can be of no assistance.")

■ Nor were Divian's opinions admissible under Fed.R.Evid. 701, as non-expert opinions. That rule provides:

If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness; (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Divian's opinion testimony does not meet the requirements of parts (a) and (b) of Evidence Rule 701. His opinions (calculations) were not rationally based on his own "perception," but rather upon several assumed facts given to him by the Trustee and Trustee's counsel. Nor were Divian's opinions "helpful" to a clear understanding of his other testimony or to "the determination of a fact in issue."

Because Divian's opinions did not meet the standards under either Evidence Rule 701 or 702, Divian's opinions were inadmissible. In this bench trial, the Court did allow Divian's testimony regarding his opinions and his explanations of the opinions, over the objections of Art Leather,[36]

---

**36.** *See* T–71, 81, 89–90, 96, 108. Counsel for Art Leather captured the essence of the prob-

lem with Divian's "expert" opinions, when he argued that the Trustee was "essentially hav-

but having heard Divian's entire testimony and explanations of the bases for his opinions, the Court now concludes that the testimony should not have been admitted.

■ In conjunction with Divian's opinion testimony, the Court admitted, over Art Leather's objection, Plaintiff's Exhibits 39 and 42, which Divian used to elaborate on his opinion testimony that the unsecured creditors GE Capital and Art Leather will receive less than a 100% distribution in the CNA bankruptcy case. As Divian acknowledged, however, each of these exhibits was premised on Divian's opinion that the distribution to general unsecured creditors in the CNA bankruptcy case would be 19%. Because these exhibits are based upon Divian's inadmissible opinion testimony, they too are inadmissible. The exhibits should not have been admitted. But even if they were admitted into evidence, the Court would give these exhibits no weight, because they add nothing to Divian's unsupported and inadmissible opinions.

The Trustee argued, at trial and in his post-trial brief, that the facts and data that Divian relied upon from Plaintiff's Exhibits 40 and 41 in reaching his opinions are, in the words of Fed.R.Evid.703,[37] "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." If this is so, argues the Trustee, the facts and data from these exhibits need not themselves be admissible or admitted into evidence in order for Divian's expert opinion to be admitted. But that argument by the Trustee overlooks the problem identified

above—namely, that Divian's opinions are not *expert* opinions at all. Therefore Evidence Rules 702 and 703 do not apply to them.

Nor is the particular data that Divian drew from Exhibits 40 and 41 admissible in itself, simply because Divian relied on the data in forming his opinion. Plaintiff's Exhibits 40 and 41 themselves were not admitted into evidence. As noted above, neither the Trustee nor Art Leather moved their admission into evidence. And the critical facts that Divian used from those two exhibits—namely, that the estate's cash on hand at the time was $2,927,115.91; and that the allowable unsecured claims against the CNA estate total $15,920,872.14—are facts that Divian's testimony did not and could not establish. As described in Part III–B–2 of this opinion, Divian's testimony made clear that he had no independent knowledge of these facts, and no other witness testified to these facts at trial. There simply was no admissible evidence presented at trial of these facts. At most, Divian's testimony presented only inadmissible hearsay regarding these facts. *See* Fed.R.Evid. 801, 802; cf. *Mike's Train House, Inc. v. Lionel, L.L.C.,* 472 F.3d 398, 409 (6th Cir. 2006)(even an expert testifying under Rule 702 cannot testify about another, non-testifying expert's report and conclusions, not admitted into evidence; such testimony is inadmissible hearsay). And even if such hearsay evidence was admissible, the Court would give it no weight.

■ The Court's holding that Divian's opinions are inadmissible does not

ing him [Divian] be relegated to doing simple division." T–96.

**37.** Rule 703 provides in pertinent part that:
The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted.

mean that the § 547(b)(5) analysis cannot be the subject of expert opinion testimony. Expert testimony may be admissible, for example, in the form of opinions of the value of some or all of the bankruptcy estate's assets, or, perhaps, opinions about what claims filed in the bankruptcy case are allowable and what claims are subject to a valid objection. But in this case the Trustee's expert expressed no opinions on these subjects at all. His opinions were limited to performing simple math on assumed but unproven numbers, as described above. For this reason, not only are Divian's opinions inadmissible, but also the Court would give them no weight, even if they were admissible.

**4. The Court's hypothetical Chapter 7 liquidation analysis under § 547(b)(5)**

As discussed above, the Trustee's proof is missing several critical facts needed to establish his § 547(b)(5) element. The Court's hypothetical Chapter 7 liquidation analysis required by § 547(b)(5) and Sixth Circuit case law would be the following ("missing" items noted below are those unsupported by any admissible evidence presented at trial):

**First, add up the value of the assets:**

1. Cash on hand (as of the time of trial) — $ [missing; no evidence admissible, against Art Leather, but Trustee admits as much as: $2,927,115.91]

2. Add-back the transfers the Trustee seeks to avoid in this case — $3,258,565.63

3. The liquidation value of the estate's claim against Plante & Moran LLP for accounting malpractice — $ [missing]

4. The liquidation value of the estate's claims against others, if any, not collected as of the time of trial — $ [missing]

Total Assets available to pay unsecured claims: *unknown, but at least $ 6,185,681.54*

**Second, subtract from the assets the present and projected allowable Chapter 7 administrative expenses, not yet paid as of the time of trial:** — $ [missing]

Subtotal: remaining assets left to pay unsecured claims: *unknown, but on this record, must assume at least $ 6,185,681.54*

**Third, subtract allowable unsecured claims (as noted above, the Trustee admitted that there are no secured claims left to pay):**

1. Allowable unsecured claims: — $ [missing]

2. Add-back the preference recovery sought from Art Leather in this case: — $3,258,565.63

*Total unsecured claims: unknown, but a least $ 3,258,565.63*

*Distribution to unsecured creditors: unknown, but may be 100%*

### 5. Discussion of the Court's hypothetical Chapter 7 liquidation analysis

#### a. Assets

Asset number 1 in the Court's chart above is the cash on hand at the time of trial. This amount is a shortcut of sorts. It is supposed to reflect the value of all estate assets that had been reduced to money up to the time of trial, less any administrative expenses and secured claims paid by the Trustee up to the time of trial. The Trustee claimed, but did not prove with any admissible evidence, that the amount of cash in the estate was $2,927,115.91, after the Trustee had paid the $10 million secured claim of Bank One, Michigan. That is an admission by the Trustee that Art Leather can use, but because there is no admissible evidence presented by the Trustee, *i.e.*, evidence usable against Art Leather, the Court cannot find that the cash in the estate does not *exceed* the $2.9 million amount. Thus, the Court finds that the cash on hand at the time of trial was *at least* $2,927,115.91, and no evidence demonstrates that it was not a *higher* amount.

Asset number 2 in the chart above is included because § 547(b)(5)(B) requires the Court to assume that the allegedly preferential transfers at issue in this case "had not been made." The Court therefore assumes that the funds transferred would be part of the estate as of the petition date.

Asset number 3 in the chart is the value of the CNA bankruptcy estate's claim against Plante & Moran for pre-petition accounting malpractice. The Trustee presented no admissible evidence of the value of this claim. Jeffrey Divian's assumption, that the *maximum* value of that claim was

$5 million, was not based on any admissible evidence. Divian testified that he "threw out that number" as a maximum recovery amount "based on discussions I've had with the Trustee." He also testified that "[w]hether that's really a realistic dollar amount we haven't gone into detail on that." [38] Divian did not testify that he had any knowledge regarding the details or merits of the estate's claim against Plante & Moran. And Divian gave no details of his discussions with the Trustee about the claim. Any such testimony would have been inadmissible hearsay under Fed.R.Evid. 802 in any event.

If the Court were to use the $5 million "maximum" amount assumed by Divian as the liquidation value of the Plante & Moran claim, that would increase the amount of total assets available to pay unsecured claims on the Court's chart above, from "unknown, but at least $6,185,681.54" to "unknown, but at least $11,185,681.54."

■■■■ As noted in Part III–B–2–b of this opinion, after the trial in this case, the Court ultimately dismissed the Trustee's claim against Plante & Moran, with prejudice, because of discovery rule violations by the Trustee and Trustee's counsel in that adversary proceeding. The Trustee did not appeal that decision. The fact that the estate's claim against Plante & Moran ultimately came to nothing, however, does not necessarily mean that the claim had no value for purposes of the § 547(b)(5) hypothetical chapter 7 distribution. In that hypothetical chapter 7 liquidation, the Court must value the estate's assets as they existed at the time of the filing of the petition in the CNA bankruptcy case. In valuing the Plante & Moran claim, the Court should not assume that after the filing of the petition the Trustee would lose

**38.** T–211.

the claim because of discovery violations. Such unexpected, post-petition events, caused by the Trustee and Trustee's counsel, are the kind of post-petition events that Sixth Circuit case law requires the Court to disregard in conducting the § 547(b)(5) analysis. Rather, the Court must assess the value of the claim as it existed on the bankruptcy petition date, disregarding post-petition events unrelated to the merits of the claim.

In *In re Tenna Corp.*, for example, the Sixth Circuit held that post-petition debt incurred by a Chapter 11 debtor during a reorganization should not be included in the § 547(b)(5) analysis as a claim that must be repaid, because the determination must be made based upon the assets and debts of the estate as of the petition date. The only exception to this noted by the Sixth Circuit is the inclusion of administrative expenses, which "are a constant element in all bankruptcy proceedings and can be derived with some degree of certainty, even when constructing a hypothetical liquidation." 801 F.2d at 823. To allow post-petition events that do not "possess these characteristics," would be to "invite manipulation" that Congress did not intend in § 547(b)(5). *Id.*

Thus, the Court must assess the value of the estate's claim against Plante & Moran without regard to the fact that the claim ultimately was dismissed with prejudice because of post-petition discovery violations. The Trustee presented no evidence of such value at trial.

Asset number 4 on the Court's chart above is the liquidation value of any other estate claims, if any, that had not yet been collected as of the time of trial. The Trustee presented no evidence as to whether or not there were any other such claims, and if so, how much would likely be collected on such claims.

In its post-trial brief, Art Leather argued that Divian's (unadmitted and inadmissible) list of assumed assets of the estate failed to include the value of at least four claims yet to be collected by the Trustee, totaling $518,800.46.[39] As evidence of this, Art Leather cited the Trustee's most recent pre-trial Annual Report filed in the CNA bankruptcy case (Docket # 631). Included in that Annual Report was a "Form 1" labeled "Individual Estate Property Record and Report." That report listed the following as liquidated claims yet to be collected by the estate, in the following amounts: "Judgment against Gary Garner & Restitution," $45,727.14; "Judgment against Findlay Industries, Inc.," $133,203.12; "Preference recovery-L & B Electric, Inc.," $39,870.20; and "Preference recovery-Pearl Leather," $300,000.00.[40] The Court notes that as of the most recent Trustee's Annual Report filed in the CNA bankruptcy case, on April 23, 2008,[41] the $300,000.00 remaining uncollected from the Pearl Leather preference matter had been paid, but the other uncollected matters had not been paid down in any amount.

There was no evidence presented at trial by the Trustee, or by Art Leather, about any of these uncollected claims or their value. Without explicitly saying so, however, Art Leather appears to be asking, in its post-trial brief, that the Court take judicial notice of the Trustee's Annual Report at Docket # 631, listing the $518,800.46 in uncollected claims noted above. Art Leather never presented or cited the Trustee's Annual Report (Docket

---

**39.** *See* Post-trial Brief of Art Leather, Inc. (Docket # 169) at 13 n. 7.

**40.** Docket # 631, Form 1 at 1, 4.

**41.** Docket # 716.

# 631) at trial, or asked the Court to take judicial notice of it at trial, but rather only raised it after the evidence was closed and the trial concluded, in its post-trial brief. This post-trial request to take judicial notice raises interesting issues under Fed. R.Evid. 201. And elsewhere in its post-trial brief, Art Leather argued that the Court should *not* take judicial notice of a document filed in the CNA bankruptcy case by the *Trustee,* which the *Trustee* argued for after the close of his case in chief, *during* trial. Art Leather argued that such judicial notice cannot be taken after proofs have closed because it would prejudice Art Leather.[42]

Because of the Court's disposition of this case, it is not necessary to decide these judicial notice issues. It would not change the outcome of this case if the Court took judicial notice of a written, pre-trial admission by the Trustee that the estate has at least $518,800.46 more in unliquidated assets than the Trustee or the Trustee's expert witness disclosed at trial. The overriding point about such assets is that the Trustee presented *no evidence* about them, or about the existence or non-existence, or value, of any other claims owned by the estate.

### b. Administrative expenses and allowable unsecured claims

If the Court had been presented with evidence from which to determine the value of the estate assets, it would then have to compare that amount with the allowable unsecured claims. First, under the Sixth Circuit's *Tenna* case, discussed above, the Court would subtract Chapter 7 administrative expenses. In this case, that would mean subtracting any previously-allowed, but unpaid administrative expenses as of the time of trial, plus any projected future

allowable administrative expenses. The balance of the assets would then be applied to the allowable unsecured claims.

Here, the Trustee presented no evidence about any previously allowed but unpaid administrative expenses, or about projected future allowable administrative expenses. As a result, the Court must assume for purposes of the § 547(b)(5) analysis that there were no such expenses to be paid from the assets of the estate. And as discussed in Parts III–B–2 and III–B–3 of this opinion, the Trustee presented no admissible evidence of the amount of allowable unsecured claims in the CNA bankruptcy case.

 It is true that a properly-filed claim in the bankruptcy case is deemed allowed unless a party-in-interest objects to the claim. *See* 11 U.S.C. § 502(a). But the Court cannot simply assume that all unsecured claims that were filed in the CNA bankruptcy case but not yet objected to, as of the time of trial, are allowable claims. Nor does the Trustee argue that the Court should make that assumption. Such an assumption would be unwarranted, for at least two reasons. First, there was no evidence presented at trial in this case to support such an assumption. Second, there is no specific time limit for the trustee or other parties to file objections to claims in a Chapter 7 case. Chapter 7 trustees can, and commonly do, wait until after liquidating all or most of the assets of the bankruptcy estate, including preference claims, before conducting a comprehensive review of the claims filed and filing his objections. Engaging in the above assumption—that all filed claims are allowable merely because they have not yet been objected to by the time of trial in the preference case—would permit the kind of

---

**42.** *See* Art Leather Post–Trial Brief at 15 n. 8, citing *Colonial Leasing Co. of New England v.*

*Logistics Control Group Int'l.,* 762 F.2d 454, 460–61 (5th Cir.1985).

"manipulation" by a trustee that the Sixth Circuit warned against in the *Tenna* case, quoted above. For example, under such an assumption, a trustee could unfairly and artificially inflate the amount of allowable unsecured claims for purposes of his § 547(b)(5) case, by waiting until after completion of the preference case before objecting to any claims that should not be allowed.

The Court does not suggest that the Trustee in this case has engaged in such manipulation; and there is no evidence of that. The point of this discussion is that the Court cannot assume that all filed claims not yet objected to are allowable. Rather, the Trustee must present *evidence* of the amount of allowable claims. The Trustee in this case has not done so.

Art Leather argues that whatever the amount of allowable unsecured claims might otherwise be, the Court should not include in that amount, for purposes of § 547(b)(5), the claim filed by GE Capital. GE Capital filed an unsecured claim for $8.7 million.[43] This claim should be considered disallowed, according to Art Leather, because GE Capital was the transferee of the transfers at issue in this case, transfers alleged by the Trustee to be avoidable under § 547(b). Art Leather argues that because GE Capital has not paid back those avoidable transfers to the estate, its $8.7 million claim must be disallowed for purposes of the § 547(b)(5) analysis, based on 11 U.S.C. § 502(d). That section provides:

> Notwithstanding subsections (a) and (b) of this section, **the court shall disallow any claim of any entity** from which property is recoverable under section 542, 543, 550, or 553 of this title or **that is a transferee of a transfer avoidable under section** 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of this title, **unless such entity or transferee has paid the amount,** or turned over any such property, **for which such entity or transferee is liable under section** 522(i), 542, 543, **550,** or 553 of this title.

11 U.S.C. § 502(d)(emphasis added).

The parties argue extensively about the impact of § 502(d) on GE Capital's claim in this context. But the Court must reject Art Leather's argument for a basic reason not discussed by the parties: in conducting the § 547(b)(5) hypothetical Chapter 7 liquidation analysis, the Court must assume that the allegedly preferential transfers at issue "had not been made." 11 U.S.C. § 547(b)(5)(B). Under that assumption, GE Capital would not have received any of the transfers alleged in this case to be preferences, and therefore would not be the "transferee of a transfer avoidable under section ... 547" within the meaning of § 502(d). Nor would GE Capital be "liable under section ... 550" for any amount, within the meaning of § 502(d). There would be no basis for disallowing GE Capital's claim under § 502(d). Art Leather's § 502(d) argument is therefore without merit.

But the larger point about allowable unsecured claims remains: that the Trustee has failed to meet his burden of proving the amount (or even the approximate amount) of *allowable* unsecured claims in the CNA bankruptcy case.

Because of that failure of proof and the others reasons discussed above, the Court concludes that the Trustee has not met his burden of proving, by a preponderance of the evidence, the § 547(b)(5) element of his preference case against Art Leather. The Trustee has failed to prove that in the hypothetical Chapter 7 liquidation, unsecured creditors of CNA would receive less

---

43. PX–9 is a copy of GE Capital's proof of claim, in the amount of $8,763,101.12.

than a 100% distribution. *See Still v. Rossville Bank (In re Chattanooga Wholesale Antiques, Inc.),* 930 F.2d at 464, 465. As a result, Art Leather is entitled to judgment on the Trustee's preference claim(s) (Count I).

Because the Trustee's preference claim fails, the Court also must give judgment to Art Leather on the Trustee's Count V, which seeks to disallow Art Leather's claim under § 502(d). That Count is premised on the Trustee's success on the preference claim.

### 6. Other issues

There are other disputed elements and defenses in this case, in addition to the § 547(b)(5) element of the Trustee's case. The parties presented competing evidence and argument about (1) whether Art Leather qualifies as a transfer beneficiary under §§ 547(b)(1) and 550(a)(1); (2) whether and to what extent Art Leather has a valid "ordinary course of business" defense under § 547(c)(2); and (3) the way in which Art Leather's acknowledged "subsequent new value" defense under § 547(c)(4) interacts with its ordinary course of business defense. It is unnecessary for the Court to reach any of those issues, however, because the Trustee's case fails under § 547(b)(5).[44]

### IV. Conclusion

For the reasons stated in this opinion, the Court will enter judgment for Defendant Art Leather on Counts I and V of the Trustee's amended complaint, and will dismiss Counts II through IV of the amended complaint with prejudice, as having been abandoned by the Trustee.

---

44. Similarly, it is unnecessary for the Court to rule on Art Leather's motion, made and argued during trial, to exclude Jeffrey Divian's expert testimony regarding the "transfer beneficiary" issue and regarding Art Leather's ordinary course of business defense. (Docket # 129). That motion will be denied as moot.