IN RE Joseph MCNABB and Loretta
McNabb, Debtors.

Marianna Williams, Chapter
7 Trustee, Plaintiff,

v.

Emily Ann McNabb, Defendant.

Case No. 16–10010
Adv. Pro. No. 16–5110

United States Bankruptcy Court,
W.D. Tennessee, Eastern Division.

Signed May 05, 2017

Adam C. Crider, Rainey, Kizer, Reviere & Bell, P.L.C, Charles C. Exum, Jackson, TN, for Plaintiff.

Steven N. Douglass, Harris Shelton Hanover Walsh, PLLC, Memphis, TN, for Defendant.

### MEMORANDUM OPINION RE COMPLAINT TO AVOID PREFERENTIAL TRANSFERS AND TO RECOVER AMOUNT OF SUCH TRANSFERS

Jimmy L. Croom, UNITED STATES BANKRUPTCY JUDGE

At issue in this proceeding are four pre-petition transfers the debtors made to the defendant within one year of the filing of the debtors' bankruptcy petition. Three of

the transfers were transfers of money totaling $183,950.00. The fourth transfer occurred when the debtors granted the defendant a security interest in their crops that the defendant did not perfect until approximately five months after execution of the promissory note. The defendant in this matter is the mother of one of the debtors.

The Chapter 7 Trustee is seeking to avoid these transfers pursuant to 11 U.S.C. § 47 and to recover the value of these transfers pursuant to 11 U.S.C. § 550(a). The Court conducted a trial in this matter on March 8, 2017, pursuant to Fed. R. Bankr. P. 7001. Thereafter the parties filed post-trial briefs.

■ This proceeding arises in a case referred to this Court by the Standing Order of Reference, Misc. Order No. 84–30 in the United States District Court for the Western District of Tennessee, Western and Eastern Divisions, and is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(F) and (O). This Court has jurisdiction over core proceedings pursuant to 28 U.S.C. §§ 157(b)(1) and 1334. The Court also has the constitutional and statutory authority to finally resolve preference actions. *Martino v. Miszkowicz* (*In re Miszkowicz*), 513 B.R. 553, 556 (Bankr. N.D. Ill. 2014). Thus, the Court may enter a final order in this matter. This memorandum opinion shall serve as the Court's findings of facts and conclusions of law. Fed. R. Bankr. P. 7052.

## I. FACTS

On May 1, 2015, Joseph and Loretta McNabb (collectively the "Debtors") and J & L McNabb Family Farm Partnership ("Partnership") signed a promissory note ("Promissory Note") to Emily McNabb ("Defendant") in the amount of $183,950.00. The Defendant is the mother of Joseph McNabb. The Debtors and the

Partnership used these proceeds to purchase crop inputs for the production of their 2015 crop. The note provided that "this loan may be drawn on as needed." (Tr. Ex. 1). Pursuant to the terms of the Promissory Note, the loan was payable "as soon as monies become available at harvest, but no later than November 1, 2015." (*Id.*). The Defendant disbursed the loan proceeds to the Debtors in five (5) separate installments: $25,000.00 on May 1, 2015; $128,950.00 on May 21, 2015; $10,000.00 on July 23, 2015; $10,000.00 on August 12, 2015; and $10,000.00 on September 9, 2015. (Tr. Ex. 7). The loan was interest-free.

The Defendant testified that she has not borrowed money since the 1960s. She also testified that she is not in the business of lending money. Prior to the loan at issue in this proceeding, the Defendant never made a loan of this type to Joseph McNabb. At the time of making the loan disbursements to the Debtors and the Partnership, the Defendant stated that she did not know the Debtors were having financial difficulty. She admitted that Joseph McNabb told her that without her loan, he would not be able to farm and that his normal lender, the Bank of Fayette County, would not loan him enough money to plant and harvest his 2015 crops. These statements, however, did not cause her to suspect that the Debtors were experiencing any trouble paying their bills as they became due. Instead, she assumed that the Debtors did not have enough collateral to support financing the entire amount with the Bank of Fayette County.

Joseph McNabb testified that he prepared the Promissory Note without the assistance of an attorney. He also testified that he copied the language in the note from his note with the Bank of Fayette County. The Defendant testified that the parties did not execute a security agree-

ment in conjunction with the Promissory Note nor did they discuss executing a security agreement at the time the loan was made in May 2015; however, the Promissory Note contains the following provision: "For collateral and security there shall be a lien on all 2015 crops grown including corn, milo, soybeans, and cotton." (Tr. Ex. 1). The Defendant testified that she thought that this statement meant that her loan would be repaid once the 2015 crops were harvested.

In late September 2015, Joseph McNabb prepared a UCC–1 Financing Statement ("Financing Statement") which granted the Defendant a security interest in the Debtors' 2015 crops in exchange for the May 2015 loan. Joseph McNabb gave the Financing Statement to his mother and advised her to file it with the Tennessee Secretary of State. The Secretary of State accepted the Financing Statement for filing on October 2, 2015. (Tr. Ex. 2). Pursuant to the Financing Statement, the Defendant held an "Agricultural Lien" in the amount of $183,540.00 [1] in "All 2015 Crops, including soybeans, corn, milo and cotton." The Financing Statement listed the Debtors and the Partnership as the lienees.

Two weeks prior to the filing of the Financing Statement, Crop Production Services ("CPS") filed a lawsuit against the Debtors in state court seeking damages of $521,095.89 related to the financing of the Debtors' 2014 crops. Joseph McNabb testified that he met with CPS in January 2015 about his 2014 crop loans and had been trying to resolve the dispute. Although he disputed the precise amount of the debt, McNabb testified that he did not dispute the fact that he owed CPS a substantial sum of money for his 2014 crops. Joseph McNabb received formal notice of the CPS lawsuit on September 19,

2015. Thereafter, he advised the Defendant to file the Financing Statement. The Defendant testified that she was completely unaware of the CPS lawsuit at the time of filing the Financing Statement with the Secretary of State.

Although the Promissory Note matured on November 1, 2015, the Debtors did not pay the Defendant until November 17, 2015. Joseph McNabb testified that the heavy rains in the spring and fall of 2015 caused a delay in planting and harvesting his crops. Because there was a delay in the harvest, there was also a delay in paying the creditors secured by the crops. Once the Debtors' crops were sold, they paid the first priority lienholder, the Bank of Fayette County, and the Defendant in full. Joseph McNabb testified at the trial in this matter that his ordinary way of doing business was to repay the lienholder once his crops were harvested and sold.

Because the Defendant obtained the funds she lent to the Debtors from three different sources, she asked the Debtors to make three separate disbursements to her when repaying the loan. Accordingly, the Debtors executed three Loan Disbursement Checks to the Defendant on November 17, 2015. The checks totaled $183,950.00. (Tr. Ex. 3).

The Debtors filed their chapter 7 bankruptcy petition on January 5, 2016. Joseph McNabb testified that he did not know he would need to file for bankruptcy relief until he harvested and sold his crops in late fall of 2015. He paid his bankruptcy attorney $2,500.00 on November 23, 2015, in anticipation of filing for bankruptcy relief. (Tr. Ex. 5 at 7). At the trial in this matter, the Defendant testified that she did not know the Debtors were going to file for bankruptcy relief until December

1. Although the promissory note was for $183,950.00, the Financing Statement was only for $183,540.00. The parties did not explain this discrepancy.

2015. Joseph McNabb supported the Defendant's claim about her lack of knowledge at the time of making the loan and at the time of filing the Financing Statement.

The Debtors disclosed the pre-petition transfers to the Defendant under item number 7 on their Statement of Financial Affairs which asks debtors to disclose any payments to insiders within one year prior to filing for bankruptcy relief. On the schedules attached to their petition, the Debtors indicated that they had $1,581,535.00 in total assets and $1,657,841.41 in total liabilities at the time of filing for bankruptcy relief. Of the Debtors' total liabilities, $988,750.28 was secured debt. At the trial in this matter, Joseph McNabb admitted that there were not any significant differences in the amount of assets he owned or the amount of secured and unsecured debt he owed six months prior to filing his chapter 7 petition. The Debtors listed two unsecured debts with CPS on Schedule E/F of their petition: (1) one in the amount of $517,435.89 and (2) one in the amount of $23,600.00. They did not indicate that either debt was contingent or unliquidated. Because the Debtors had fully repaid the loan to the Defendant pre-petition, they did not list the Promissory Note on their schedules.

Over multiple objections by counsel for the Chapter 7 Trustee, the Court allowed counsel for the Defendant to introduce a "Balance Sheet" ("Balance Sheet") into evidence "for whatever probative value it may have, if any." (Tr. Ex. 8). There is a line at the top of the Balance Sheet which states "03/09/2015 2015 Renew/LNG/DOL/PC" and a line at the bottom of the Balance Sheet which states "4/20/2015." Page 2 of the document indicates the Debtors signed it on May 21, 2015. The following statement appears immediately above the signature lines:

This information above and on attached schedules is furnished for the purpose of securing and maintaining credit and is certified to be true and correct. The undersigned authorizes the [Farm Services Agency] to make all inquiries deemed necessary to verify the accuracy of the information contained above to determine my credit-worthiness and to answer questions about their credit experience with me.

(Tr. Ex. 8 at 2). Joseph McNabb testified that Farm Services Agency ("FSA") prepared the document. He could not explain why three different dates appear on the Balance Sheet nor did he know when FSA prepared the form.

Only 2 of the 11 pages of the Balance Sheet were introduced into evidence. The document indicates that the Debtors' personal assets totaled $486,491.00 and that their personal liabilities totaled $187,112.00. The Balance Sheet also indicates that the Debtors' business assets totaled $1,793,603.00 and the business liabilities totaled $1,240,795.00. The Balance Sheet indicates that the Debtors' house and the land upon which it sits at 60 Black Ankle Drive in Oakland, Tennessee, was worth $351,600.00 at the time the Balance Sheet was prepared. The Debtors listed the same property on Schedule A/B of their petition with a value of $236,500.00. When asked about this discrepancy in value, Joseph McNabb testified that they had the house and land appraised by a professional appraiser for purposes of preparing the Debtors' bankruptcy schedules. He admitted, however, that there were no significant changes to the property between the time the Balance Sheet and the petition were prepared.

When asked about the difference in value of the Debtors' other assets, Joseph McNabb could not explain the discrepancies between the information provided on

the Balance Sheet and the Debtors' chapter 7 petition other than asserting that the value of his equipment fluctuates with the commodity prices and that he sold approximately 130 acres of farmland in April or May 2015.[2] The Debtors did not disclose this sale on their chapter 7 petition.

The Chapter 7 Trustee, Marianna Williams ("Trustee"), filed this adversary proceeding against the Defendant on August 31, 2016. The Trustee is seeking to avoid the Defendant's security interest in the Debtors' crops and the November 17, 2015 loan payments as preferential transfers pursuant to 11 U.S.C. § 547(b). The Trustee is also seeking to recover the value of these transfers, along with pre- and post-judgment interest and costs, from the Defendant pursuant to 11 U.S.C. § 550.

At the trial in this matter, the Trustee testified that she has collected $44,884.00 in FSA payments for 2015. She also expects to collect the Debtors' 2015 income tax refund in the amount of $36,000.00. The Trustee has incurred tax liabilities of approximately $6,000.00 on the money she has collected thus far for the estate. The bar date for claims other than those held by the government was January 17, 2017. As of the date of trial, claims in the amount of $1,141,783.83 had been filed. Of this amount, $192,600.00 is secured debt which will not share in a distribution from the estate. That leaves $948,983.00 in unsecured claims to be paid. CPS will receive the lion's share of this amount based on the size of its $517,435.89 unsecured claim. The Defendant filed a contingent, unsecured claim for $183,950.00 on January 13, 2017. Based on the size of the estate in this case, unsecured creditors will not receive 100% payment of their claims.

## II. ANALYSIS

The Trustee is seeking to avoid four pre-petition transfers the Debtors made to the Defendant within one year of the filing of the Debtors' bankruptcy petition. These transfers can be broken down into two categories: (1) the creation of the Defendant's security interest in the Debtors' 2015 crops; and (2) the Debtors' remittance of the three Loan Disbursement Checks to the Defendant on November 17, 2015, in the total amount of $183,950.00. In analyzing the Trustee's claims, the Court will address each category of transfers separately if and when it is necessary.

In response to the preference action, the Defendant has asserted that § 547(c)(2) prohibits the Trustee from avoiding the transfers at issue in this case. Section 547(b) provides that the Trustee may avoid certain transfers "[e]xcept as provided in subsections (c) and (i)[.]" 11 U.S.C. § 547(b). Section 547(c)(2) provides

(c) The trustee may not avoid under this section a transfer—

. . .

(2) to the extent that such transfer was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee, and such transfer was—

(A) made in the ordinary course of business or financial affairs of the debtor and the transferee; or

(B) made according to ordinary business terms;

11 U.S.C.A. § 547(c)(2). The Court will address the Trustee's claim under § 547(b) before analyzing the Defendant's § 547(c) defense.

---

**2.** Joseph McNabb testified that he remitted all of the proceeds from the sale of the farmland in April or May 2015 to the lienholder, the Bank of Fayette County.

## A. 11 U.S.C. § 547(b)

█ Under § 547(b) of the Bankruptcy Code, a party may avoid certain pre-petition transfers of "an interest of the debtor in property." 11 U.S.C. § 547(b). The purpose of this statute is to reclaim property for the benefit of the bankruptcy estate so that there is more property available for distribution to creditors. As the Sixth Circuit has recognized, § 547(b) "serves two purposes."

> First, it fosters equality of distribution among creditors, which is one of the primary goals of the Bankruptcy Code. *See Begier v. IRS.*, 496 U.S. 53, 58, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990). ... Second, it "discourages 'secret liens' upon the debtor's collateral which are not perfected until just before the debtor files for bankruptcy." *Grover v. Gulino (In re Gulino )*, 779 F.2d 546, 549 (9th Cir.1985).

*Chase Manhattan Mortg. Corp. v. Shapiro (In re Lee )*, 530 F.3d 458, 463 (6th Cir. 2008). " 'Property of the debtor' subject to the preferential transfer provision is best understood as that property that would have been part of the estate had it not been transferred before the commencement of bankruptcy proceedings." *Begier*, 496 U.S. at 58, 110 S.Ct. 2258 (1990). Essentially, anything that would qualify as "property of the estate" under § 541 had it not been transferred pre-petition may be subject to a preference action. *In re Lee*, 530 F.3d at 464. It is well settled that the transfer of funds from a debtor's bank account for loan payments and the creation of a security interest constitute "transfers" for purposes of § 547(b). *Official Comm. Unsecured Creditors of Grand Eagle Cos., Inc. v. ASEA Brown Boverie, Inc.*, 313 B.R. 219, 231 (N.D. Ohio 2004); *In re Jeans*, 326 B.R. 722, 725 (Bankr. W.D. Tenn. 2005); *see also* 11 U.S.C. § 101(54).

There are five elements to a § 547(b) claim. First, the transfer must have been made "to or for the benefit of a creditor." 11 U.S.C. § 547(b)(1). Second, the transfer must have been made "for or on account of an antecedent debt owed by the debtor before such transfer was made." 11 U.S.C. § 547(b)(2). Third, the transfer must have been "made while the debtor was insolvent." 11 U.S.C. § 547(b)(3). Fourth, the transfer must have been made "on or within 90 days before the date of the filing of the petition" or "between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider." 11 U.S.C. § 547(b)(4)(A) and (B). Fifth, the transfer must have enabled the creditor to receive more than he would have received if the case were a chapter 7 case, the transfer had not been made, and the creditor received payment of the debt "to the extent provided by the provisions of this title." 11 U.S.C. § 547(b)(5)(A) and (B).

█ The party bringing the preference action bears the burden of proof on each of the five elements and must establish each element by a preponderance of the evidence. 11 U.S.C. § 547(g); *Triad Int'l Maint. Transp., Inc. v. S. Air Transp., Inc. (In re S. Air Transp., Inc.)*, 511 F.3d 526, 535 (6th Cir. 2007). Determination of each element of a preference action is a question of material fact. *Derryberry v. Albers (In re Albers )*, 67 B.R. 530, 534 (Bankr. N.D. Ohio 1986).

### 1. 11 U.S.C. § 547(b)(1)

The first element of a § 547(b) preference action requires the Trustee to prove that the transfer in question was made "to or for the benefit of a creditor." 11 U.S.C. § 547(b)(1). The Bankruptcy Code defines "creditor" as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning

the debtor[.]" 11 U.S.C. § 101(10)(A). The Code defines "claim" as the "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured[.]" 11 U.S.C. § 101(5). In the case at bar, it is undisputed that the Defendant held a $183,950.00 claim against the Debtors by virtue of the May 1, 2015, Promissory Note. The Defendant filed a claim against the estate on January 13, 2017. Consequently, she is clearly a "creditor" within the meaning of §§ 101 and 547. The Trustee has met her burden of proof as to the first element of her preference action.

## 2. 11 U.S.C. § 547(b)(2)

■ The second element of a preference action requires the Trustee to demonstrate that the transfers at issue were "on account of an antecedent debt." 11 U.S.C. § 547(b)(2). The Bankruptcy Code defines "debt" as "liability on a claim." 11 U.S.C. § 101(12). Although the Code does not define "antecedent debt," courts have interpreted the term to mean a debt that "was incurred prior to the transfer of a debtor's property." *Hendon v. GMAC (In re B & B Utils. Inc.)*, 208 B.R. 417, 421 (Bankr. E.D. Tenn. 1997).

### a. Creation of Security Interest

■ Determining whether a transfer of a security interest is on account of an antecedent debt can be slightly complex. Section 547(e)(1)(B) provides that "a transfer of a fixture or property other than real property is perfected when a creditor on a simple contract cannot acquire a judicial lien that is superior to the interest of the transferee." Section 547(e) further provides that "a transfer is made"

(A) at the time such transfer takes effect between the transferor and the transferee, if such transfer is perfected at, or within 30 days after, such time[;]

(B) at the time such transfer is perfected, if such transfer is perfected after such 30 days;[3]

11 U.S.C. § 547(e)(2). If perfection occurs more than 30 days after the transfer takes effect, then the transfer was "made on account of antecedent debt" and may be subject to avoidance. *In re Lee*, 530 F.3d at 466; *see also Palmer v. Key Bank USA (In re Conley)*, 318 B.R. 812, 817 (Bankr. E.D. Ky. 2004) (holding that "[a]n untimely perfected security interest, therefore, constitutes a transfer 'for or on account of an antecedent debt.' "). If, however, perfection occurs within 30 days of the transfer, the trustee may not avoid the transfer. 11 U.S.C. § 547(e)(2)(A); *Ray v. Sec. Mut. Fin. Corp. (In re Arnett)*, 731 F.2d 358, 363 (6th Cir. 1984) (recognizing that § 547(e)(2)(A) provides that the perfection of transfers within 30 days "relate[ ] back to the date of the underlying transaction," and are not, therefore, on account of antecedent debt). To determine when a transfer is perfected, courts must look to state law. *Battery One–Stop Ltd. v. Atari Corp. (In re Battery One–Stop Ltd.)*, 36 F.3d 493, 495 (6th Cir. 1994). In Tennessee, an agricultural lien is perfected by filing a financing statement with the Secretary of State. Tenn. Code Ann. §§ 47–9–308(b) and 47–9–310(a).

■ Although the Promissory Note in the case at bar clearly provided for the creation of a security interest, there was a delay between execution of the note and perfection of that interest. The note was executed on May 1, 2015, while the Financing Statement was not filed until October

---

**3.** Section 547(e)(2) contains an exception to this rule; however, it is not applicable in the case at bar because the transfer was perfected prior to the filing of the petition.

2, 2015. As a result, the Trustee asserts that the transfer of the security interest to the Defendant did not occur, for purposes of the Bankruptcy Code, until more than 30 days after the creation of the obligation. Pursuant to § 547(e)(2)(B), the Trustee argues that the transfer of the security interest to the Defendant was on account of antecedent debt.

As stated *supra*, the Promissory Note in this case provided that "this loan may be drawn on as needed." (Tr. Ex. 1). In response to the Debtors' request for draws, the Defendant made the following disbursements of the loan proceeds: $25,000.00 on May 1, 2015; $128,950.00 on May 21, 2015; $10,000.00 on July 23, 2015; $10,000.00 on August 12, 2015; and $10,000.00 on September 9, 2015. (Tr. Ex. 7). The Defendant concedes that four of the five disbursements occurred more than 30 days prior to the filing of the Financing Statement on October 2, 2015, and were, therefore, on account of an antecedent debt pursuant to 11 U.S.C. § 547(e)(2)(B). However, with respect to the $10,000 disbursement on September 9, 2015, the Defendant argues that the transfer of the security interest in that portion of the loan proceeds occurred less than 30 days prior to perfection and, as such, was not on account of antecedent debt pursuant to 11 U.S.C. § 547(e)(2)(A).

For purposes of § 547(b)(2), the Sixth Circuit has recognized that "[i]n the context of a loan, the borrower incurs the debt at the time the lender disburses the loan proceeds." *In re Lee*, 530 F.3d at 464–65 (citations omitted). Clearly, the Debtors' obligation to repay the $10,000.00 disbursed on September 9, 2015, did not arise unless and until the Defendant transferred those funds to them. Because the Financing Statement was filed within 30 days of this transfer, § 547(e)(2)(A) mandates that the transfer of the security interest in the

$10,000.00 disbursed on September 9, 2015, is deemed to have occurred simultaneously with the disbursement. The Court therefore finds that the transfer of the security interest in the September 9, 2015 disbursement of $10,000.00 was not on account of antecedent debt within the meaning of § 547(b)(2). As a result, the Trustee may not avoid the transfer of the security interest in that portion of the loan proceeds.

**b. Repayment of Promissory Note**

With respect to the Debtors' repayment of the Promissory Note on November 17, 2015, the Court finds that the repayment was "on account of an antecedent debt." 11 U.S.C. § 547(b)(2). The parties executed the Promissory Note on May 1, 2015, but the Debtors did not repay the note until November 17, 2015, when they issued the three Loan Disbursement Checks to the Defendant. Clearly, the May 1, 2015 Promissory Note was an antecedent debt at the time the Debtors transferred the funds on November 17, 2015. *See Hunter v. S.K. Austin Co. (In re Beck )*, 25 B.R. 947, 953 (Bankr. N.D. Ohio 1982) (finding that repayment of an obligation created in the past was on account of an antecedent debt).

**3. 11 U.S.C. § 547(b)(3)**

The third element of a § 547 preference action requires the Trustee to demonstrate that the transfer was made while the debtor was insolvent. 11 U.S.C. § 547(b)(3).

Pursuant to 11 U.S.C. § 547(f), debtors are presumed to be insolvent within 90 days of filing a petition for purposes of § 547(b)(3). The presumption is rebuttable, but the debtor "must present some evidence of solvency that is more than speculative." *Madden v. Morelli (In re Energy Conversion Devices, Inc.)*, 548 B.R. 208, 221 (Bankr. E.D. Mich. 2016); *see also Bluegrass Ford–Mercury, Inc., v. Farmers Nat'l Bank of Cynthiana (In re*

*Bluegrass Ford–Mercury, Inc.*), 942 F.2d 381, 391 (6th Cir. 1991). The evidence must demonstrate that the debtor was solvent "at the time of the transfer." *In re Energy Conversion Devices, Inc.*, 548 B.R. at 221 (citing *Gasmark Ltd. Liquidating Trust v. Louis Dreyfus Nat'l Gas Corp.*, 158 F.3d 312, 315 (5th Cir. 1998)). "In the absence of any evidence to the contrary, the presumption of insolvency establishes the fact that the debtor was insolvent at the time of the transfer." *Thermoview Indus., Inc., v. Nelson E. Clemmens Westchester Fire Ins. Co. (In re Thermoview Indus., Inc.*), 358 B.R. 330, 335 (Bankr. W.D. Ky. 2007) (citing *Scharffenberger v. United Creditors Alliance Corp. (In re Allegheny Health, Educ. & Research Found.*), 292 B.R. 68, 77 (Bankr. W.D. Pa. 2003)).

In this case, the Debtors filed their bankruptcy petition on January 5, 2016. The 90–day presumed insolvency period began to run on October 7, 2015.

 In order to prove insolvency outside the 90–day presumed insolvency period, the Court must look beyond § 547. Section 101(32) of the Bankruptcy Code defines "insolvent" as

(A) with reference to an entity other than a partnership and a municipality, [a] financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation, exclusive of—

 (i) property transferred, concealed, or removed with intent to hinder, delay, or defraud such entity's creditors; and

 (ii) property that may be exempted from property of the estate under section 522 of this title;

11 U.S.C. § 101(32)(A). "This definition of insolvency provides the Court with a 'balance sheet' test to determine insolvency."

*French v. Nardolillo (In re Perry*), 158 B.R. 694, 697 (Bankr. N.D. Ohio 1993). In comparing a debtor's assets to his liabilities, a court must exclude property that is exempted from the bankruptcy estate or property that was fraudulently transferred. 11 U.S.C. § 101(32)(A); *Babiker v. Citizens Contracting Co., Inc., (In re Babiker*), 180 B.R. 458, 461 (Bankr. E.D. Va. 1995) (citing 11 U.S.C. § 101(32)(A)(ii); *see also* 5 Collier on Bankruptcy ¶ 547.03[5] n. 96 (Alan N. Resnick & Henry J. Sommer eds., 16th ed., 2012) (*quoting* H.R. Rep. No. 595, 95th Cong., 1st sess. 177, 312 (1977)). "The determination of insolvency is to be made at the time when the alleged preferential transfer occurred and not when the petition was filed." *Roeder v. Alleman (In re Davis*), 120 B.R. 823, 825 (Bankr. W.D. Pa. 1990); *Hunter v. Dupuis (In re Dupuis*), 265 B.R. 878, 886 (Bankr. N.D. Ohio 2001).

### a. Security Interest

Pursuant to § 547(e)(2), the transfer of the security interest in the loan disbursements occurred on two dates: (1) September 9, 2015, when the Defendant made the final $10,000.00 disbursement under the Promissory Note and (2) October 2, 2015, when the Defendant perfected her lien in the first four disbursements under the note by filing the Financing Statement with the Secretary of State. Thus, both of these transfers occurred prior to the presumed insolvency period of § 547(f).

 According to the Debtors' petition and schedules, they had $1,581,535.00 in total assets and $1,657,841.41 in total liabilities at the time of filing for bankruptcy relief on January 5, 2016. The Debtors claimed exemptions totaling $149,835.00 on Schedule C of their petition. Subtracting the value of the exempted property from their assets leaves the Debtors with $1,431,700.00 in assets as of the petition

date. The Debtors' liabilities therefore exceeded their assets by $226,141.41 and they were clearly insolvent at the time they filed for bankruptcy relief. At the trial in this matter, Joseph McNabb admitted that there were not any significant differences in the amount of his assets or liabilities between the petition date and six-months prior thereto. The Balance Sheet the Defendant introduced into evidence at the trial in this matter was prepared more than seven months before the Debtors filed their bankruptcy petition and more than four months before the Defendant filed the Financing Statement. Thus, the information provided therein does not rebut the conclusion that the Debtors were insolvent on September 9, 2015, and October 2, 2015. The only dates that are relevant to the Court's § 547(b)(3) inquiry are the dates of the transfers. The Debtors' solvency on any date before that is immaterial to this element of the Trustee's claim. Accordingly, the Court finds that the Debtors were insolvent at the time the Defendant made the final $10,000.00 disbursement on September 9, 2015, and at the time the Defendant perfected her security interest in the first four loan disbursements on October 2, 2015.

### b. Repayment of Promissory Note

In this case, the 90–day presumed insolvency period began to run on October 7, 2015. Thus, the Debtors' full repayment of the Promissory Note on November 17, 2015, occurred during the presumed insolvency period. Although the Defendant attempted to rebut this presumption by introducing the Balance Sheet into evidence, the document has no probative value on the issue of the Debtors' solvency at the time of repaying the Promissory Note. As stated *supra*, it is unclear when the Balance Sheet was prepared. The latest date on the document is May 21, 2015. For purposes of § 547(b), it is the debtor's

solvency on the date of the transfer which is relevant, not the date on which the debt was incurred. In this case, the Debtors transferred money to the Defendant when they repaid the Promissory Note on November 17, 2015. This is within the presumed insolvency period. A balance sheet prepared at least six months prior to repayment of the loan does not rebut this presumption. Consequently, the Court finds that the Debtors' repayment of the Promissory Note on November 17, 2015, was made while the Debtors were insolvent within the meaning of § 547(b)(3).

### 4. 11 U.S.C. § 547(b)(4)

The fourth element of a § 547(b) preference action requires the Trustee to prove that the transfers at issue took place "on or within 90 days before the date of the filing of the petition" or "between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider." 11 U.S.C. § 547(b)(4)(A) and (B). The Bankruptcy Code defines an "insider" as the "relative of a debtor." 11 U.S.C. § 101(31)(A)(i). Section 101(45) defines "relative" as an "individual related by affinity or consanguinity within the third degree[.]" 11 U.S.C. § 101(45). In the case at bar, the Defendant is Joseph McNabb's mother and is clearly an insider within the meaning of §§ 101 and 547(b).

The transfers at issue in this case took place on September 9, 2015, October 2, 2015, and November 17, 2015. All of these transfers were well within the one-year look-back period of § 547(b)(4) and were made to an "insider." As such, the Trustee has met her burden of proof with respect to this element of her claim.

### 5. 11 U.S.C. § 547(b)(5)

The fifth and final element of a § 547 preference action requires the Trus-

tee to demonstrate that the transfers enabled the creditor to receive more than he would have received if the case were a chapter 7 case, the transfer had not been made, and the creditor received payment of the debt "to the extent provided by the provisions of this title." 11 U.S.C. § 547(b)(5)(A) and (B).

This avoidance provision is designed "to accomplish proportionate distribution of the debtor's assets among its creditors, and therefore to prevent a transfer to one creditor that would diminish the estate of the debtor that otherwise would be available for distribution to all."

*In re S. Air Transp., Inc.*, 511 F.3d at 530 at (quoting *Stevenson v. Leisure Guide of Am., Inc. (In re Shelton Harrison Chevrolet, Inc.)*, 202 F.3d 834, 837 (6th Cir 2000)). "Payments to a creditor who is fully secured are not preferential since the creditor would receive payment up to the full value of his collateral in a Chapter 7 liquidation. Payments to an unsecured or undersecured creditor, however, are preferential." *Ray v. City Bank & Trust Co. (In re C-L Cartage Co., Inc.)*, 899 F.2d 1490, 1493 (6th Cir. 1990).

▆▆▆ This element of a § 547(b) preference claim "require[s] the bankruptcy court to construct a 'hypothetical Chapter 7 case,' i.e., to determine what the creditor would have received in a liquidation." *Still v. Rossville Bank (In re Chattanooga Wholesale Antiques, Inc.)*, 930 F.2d 458, 461, 464 (6th Cir. 1991).

The test requires the Court to determine what distribution would be made in such a hypothetical Chapter 7 liquidation to the creditor who received the challenged transfer (or the creditor for whose benefit the transfer was made), assuming that the transfer had not been made.

*Shapiro v. Art Leather, Inc. (In re Connolly N. Am., LLC)*, 398 B.R. 564, 571

(Bankr. E.D. Mich. 2008). The Sixth Circuit has held that "any unsecured creditor ... who receives a payment during the preference period is in a position to receive more than it would have received under a Chapter 7 liquidation" "[u]nless the estate is sufficient to provide a 100% distribution" to unsecured creditors. *In re Chattanooga Wholesale Antiques, Inc.*, 930 F.2d at 465. Stated another way, a court analyzing a claim under § 547(b)(5) must ask "whether the post-filing status of the creditor would have been any different had the transfers not been made and whether the remaining creditors were adversely affected as a consequence of those transfers." *Sloan v. Zions First Nat'l Bank (In re Castletons, Inc.)*, 990 F.2d 551, 554–55 (10th Cir. 1993).

▆▆▆ The relevant inquiry date for the hypothetical chapter 7 determination is the date the bankruptcy petition was filed and not the date the transfer was made. *Neuger v. United States (In re Tenna Corp.)*, 801 F.2d 819, 822–23 (6th Cir. 1986). When conducting this analysis, a court must make a series of calculations.

The Court must first consider the liquidation value of the assets that were in the bankruptcy estate when the bankruptcy petition was filed, and to add to that the value of the allegedly preferential transfers that the Trustee seeks to avoid. On the liability side, the Court must determine the amount of allowable claims against the estate as of the petition date. Because the § 547(b)(5) analysis requires the Court to assume that the allegedly preferential transfers at issue had not been made, the amount or value of those transfers must be added to the allowable claims of the transferee[.]

*In re Connolly N. Am., LLC*, 398 B.R. at 571. Once those figures are calculated, a court must adjust the allowable claims to

include "any administrative expenses incurred during the pendency of the bankruptcy proceeding[.]" *In re Tenna Corp.*, 801 F.2d at 823.

In the case at bar, the parties failed to present any evidence of the liquidation value of the Debtors' assets as of the petition date. Given the amount of liabilities in this case, however, the Court finds that it can conduct the hypothetical Chapter 7 analysis without this information. The Debtors listed assets in the amount of $1,581,535.00 on their petition. Under the formula set forth in *In re Connolly North America, LLC,* the Court must add the value of the allegedly preferential transfers the Trustee is seeking to avoid to the Debtors' assets. The Court has already determined that perfection of the $10,000.00 loan advance the Defendant made to the Debtors on September 9, 2015, may not be avoided as a preferential transfer since it was perfected within 30 days of disbursement. As a result, the Court will add only the remaining portion of the loan, $173,950.00, to the Debtors' assets. This leaves the Debtors with $1,755,485.00 in assets as of the petition date.

The Debtors listed liabilities of $1,657,841.41 on their chapter 7 petition. Under the rule set forth in *In re Connolly North America, LLC,* the Court must add the value of the allegedly preferential transfer to the total liabilities. Again, the Court has determined that the Trustee may not avoid the $10,000.00 disbursement made by the Defendant on September 9, 2015. As such, the most the Trustee can recover in this case would be $173,950.00. Adding that to the Debtors' total liabilities brings their debt to $1,831,791.41. The Trustee testified that she has incurred $6,000.00 in tax liability on the property she has collected for the estate. She did not testify as to any other administrative expenses she had incurred as of the trial

date in this matter. As a result, for purposes of the *In re Connolly North America, LLC,* formula, the Court will only add the $6,000.00 in taxes. This brings the Debtors' total liabilities to $1,837,791.41.

What these numbers demonstrate is that there is no conceivable way that the Debtors' unsecured creditors would receive a 100% payout in this case. The Debtors' liabilities exceed the value of their assets by $82,306.41. This shortfall does not take into consideration the Debtors' claimed exemptions. Nor does this shortfall take into consideration the fact that the Trustee has incurred administrative expenses that are not included in the Debtors' total liabilities. At the trial in this matter, the Trustee testified that so far she has collected $44,884.00 in Farm Services payments and that she expects to collect the Debtors' 2015 income tax refund in the amount of $36,000.00. These amounts add up to $80,884.00 in collections. As of the trial date, creditors had filed claims of $1,141,793.83 in the case, only $192,600.00 of which were secured. Setting aside all administrative claims for the moment, this means the absolute most unsecured creditors can hope to get in this case given the current amount of recovered assets is an 8.5% repayment of their claims. If the Court sets aside the $173,950.00 in transfers to the Defendant, the maximum payout to unsecured creditors could increase to 26%.

### a. Security Interest

As the bankruptcy court recognized in the case of *Hunter v. Snap–On Credit Corp. (In re Fox* ), 229 B.R. 160, 167 (Bankr. N.D. Ohio 1998),

[i]t is well established that the granting of a security interest has a preferential effect as it improves the position of that creditor with respect to the other general unsecured creditors. In addition, ... the mere act of perfecting a security

interest within the preference period has a preferential effect as it allows that creditor to realize more than it otherwise would have in a liquidation under Chapter 7.

(internal citations omitted). Pursuant to § 547(e)(2)(B), the transfer of the security interest in the first four loan disbursements in this case is deemed to have occurred on October 2, 2015. Clearly, Defendant's perfection of her security interest in these disbursements would allow her to realize more than she would as a general unsecured creditor in this case. The perfection of the Defendant's security interest would also diminish the amount of funds available for distribution to the Debtors' general unsecured creditors since she would be entitled to full repayment as a secured creditor. The Trustee has met her burden of proof with respect to the fifth element of her preference claim as it relates to the transfer of the security interest in the first four loan disbursements.

**b. Repayment of Promissory Note**

■ In this case, the Debtors repaid the Defendant's entire claim within approximately 6 weeks of filing for bankruptcy relief. If the security interest is set aside, the Defendant would be treated as a general unsecured creditor in this case and the most she could hope to recover would be 26% of her claim. Clearly, full repayment of her debt enabled her to receive more than she will receive in this case. Full repayment of her debt also diminished the size of the estate that is available for distribution to the Debtors' other unsecured creditors. As stated *supra*, the Defendant's disbursement of $10,000.00 on September 9, 2015, was not on account of antecedent debt. The Trustee therefore may not recover this amount from the Defendant. Allowing the Trustee to avoid and recover the remaining $173,950.00 in loan payments increases the potential pay-

out to unsecured creditors from 8.5% to 26%.

Accordingly, the Court finds that the Debtors' repayment of $173,950.00 of the loan proceeds allowed the Defendant to recover more than she would be entitled to in this case as a general unsecured creditor. The Court also finds that repayment of the $173,950.00 of the loan diminished the amount of the estate available for distribution to the Debtor's other general unsecured creditors.

**6. Conclusion of § 547(b) Analysis**

Section 547(b) is written in the conjunctive and, as such, all five elements "must be satisfied before a trustee may avoid any transfer of property as a preference." *Waldschmidt v. Ranier (In re Fulghum Const. Corp.)*, 706 F.2d 171, 172 (6th Cir. 1983). In this case, the Court finds that the Trustee has met her burden of proof with respect to all five elements of her § 547(b) preference claim with one exception: the perfection and repayment of the $10,000.00 disbursement the Defendant made on September 9, 2015. As such, the Court finds that the transfer of the security interest in the first four disbursements under the Promissory Note in the amount of $173,950.00 and the Debtors' repayment of the same amount are avoidable as preferential transfers under 11 U.S.C. § 547(b). The Court must now determine whether § 547(c) provides an exception to the Trustee's avoidance powers. If it does not, then the Trustee may recover the value of these transfers for the benefit of the estate under § 550(a).

**B. 11 U.S.C. § 547(c)**

■ Section 547(c) provides that certain pre-petition transfers may not be avoided under § 547(b). "The burden of proving nonavoidability of a transfer falls

on the party against whom recovery of the transfer is sought." *Hunter v. Amerisource Corp. (In re Parkview Hosp. Osteopathic Med. Ctr.)*, No. 98-3078, 1999 WL 313768 at *2 (6th Cir. May 6, 1999) (citing 11 U.S.C. § 547(g)). The exceptions to avoidability found in § 547(c) "are, in essence, affirmative defenses" and must be proven by a preponderance of the evidence. *Remes v. Acme Carton Corp. (In re Fasano/Harriss Pie Co.)*, 71 B.R. 287, 289 (W.D. Mich. 1987) (citation omitted); *Logan v. Basic Distrib. Corp. (In re Fred Hawes Org., Inc.)*, 957 F.2d 239, 242 (6th Cir.1992).

■ Section 547(c)(2) provides that a trustee may not avoid a transfer as a preference under § 547(b)

> (2) to the extent that such transfer was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee, and such transfer was—
>
> (A) made in the ordinary course of business or financial affairs of the debtor and the transferee; or
>
> (B) made according to ordinary business terms;

11 U.S.C.A. § 547(c)(2). This section is commonly referred to as the "ordinary course of business" exception. "The purpose of this provision 'is to leave undisturbed normal financial relations, because it does not detract from the general policy of the preference section to discourage unusual action by either the debtor or his creditors during the debtor's slide into bankruptcy.' " *Baumgartner–Novak v. Eckman (In re Eckman)*, 447 B.R. 546, 549 (Bankr. N.D. Ohio 2010) (citing *Luper v. Columbia Gas of Ohio, Inc. (In re Carled, Inc.)*, 91 F.3d 811, 815 (6th Cir. 1996) (citing S. Rep. No. 989, 95th Cong.,

2d Sess. 88, reprinted in 1978 U.S.C.C.A.N. 5787, 5874)).

■ Because the transfer of a security interest does not "serve as payment for the debt," § 547(c)(2) is inapplicable to the avoidance of security interests. *Goodman v. S. Horizon Bank (In re Norsworthy)*, 373 B.R. 194, 205–06 (Bankr. N.D. Ga. 2007) (citations omitted). Consequently, the only transfer § 547(c)(2) may insulate from avoidance in this case is the Debtors' repayment of the Promissory Note on November 17, 2015.

The starting point for determining whether a transfer is excepted from avoidance as being in the "ordinary course" is the introductory language of § 547(c)(2).

> To benefit from § 547(c)(2), the introductory language of the statute requires the defendant to show that the underlying debt was incurred in the ordinary course of the business or financial affairs of both the debtor and the transferee. This requirement does not look to the actual transfers, but instead looks to when the debt was created and then whether the debt was created in the ordinary course. In making this assessment, the Sixth Circuit Court of Appeals held that whether a debt is incurred in the ordinary course is a "peculiarly factual" analysis, not capable of being subjected to a "precise legal test." *In re Fulghum Const. Corp.*, 872 F.2d 739, 743 (6th Cir.1989), *citing In re First Software Corp.*, 81 B.R. 211, 213 (Bankr. D.Mass.1988).

*In re Eckman*, 447 B.R. at 550.

■ Section 547(c)(2)(A) requires a subjective inquiry while subsection (B) requires an objective one. *In re Fred Hawes Org., Inc.*, 957 F.2d at 244.

> The subjective prong ... requires proof that the debt and its payment are ordinary in relation to other business dealings between *that* creditor and *that*

debtor. The objective prong . . . requires proof that the payment is ordinary in relation to the standards prevailing in the relevant industry.

*Id.* Prior to enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), § 547(c)(2) was written in the conjunctive and required the defendant to prove both the subjective and objective prong of the exception. BAPCPA amended the statute by replacing the "and" between subsections (A) and (B) with "or." As such, a defendant is now only required to prove one of the two prongs. Accordingly,

post–BAPCPA, a party can prevail under § 547(c)(2) of the Bankruptcy Code by demonstrating that the *debt* that was paid by the transfer was incurred by the debtor and the transferee in the ordinary course of their business or financial affairs, and that the *transfer* (i.e., the payment) was *either* made in the ordinary course of business or financial affairs of the parties (the subjective component) under § 547(c)(2)(A) *or* that it was made according to ordinary business terms (the objective component) under § 547(c)(2)(B).

*Simon v. MacSteel (In re Am. Camshaft Specialties, Inc.),* 444 B.R. 347, 353 (Bankr. E.D. Mich. 2011).

### 1. 11 U.S.C. § 547(c)(2)(A)

 With respect to the subjective prong found in § 547(c)(2)(A), a party seeking to invoke the exception must prove that both the debt and the payment thereof occurred in the ordinary course. *Speco Corp. v. Canton Drop Forge, Inc. (In re Speco Corp.),* 218 B.R. 390, 398 (Bankr. S.D. Ohio 1998) (citing *In re Fred Hawes Org., Inc.,* 957 F.2d at 244). In analyzing transactions under this prong of § 547(c)(2), "courts generally eschew precise legal tests and instead engage in a fact-specific analysis. In doing so, they ex-

amine several factors, including timing, the amount and manner a transaction was paid and the circumstances under which the transfer was made." *In re Fred Hawes Org., Inc.,* 957 F.2d at 244 (citing *Yurika Foods Corp. v. UPS (In re Yurika Foods Corp.),* 888 F.2d 42, 45 (6th Cir. 1989)). At least one court has explained that

the requirement that the creditor show that the transaction was conducted in the ordinary course of business should usually be easy to meet. Since this showing is required merely to assure that neither the debtor nor the creditor do anything abnormal to gain an advantage over other creditors[.]

*Campbell v Cannington (In re Econ. Milling Co., Inc.),* 37 B.R. 914, 922 (D.S.C. 1983). "[A] debt will be considered not incurred in the ordinary course of business if creation of the debt is atypical, fraudulent, or not consistent with an arms-length commercial transaction." *In re Speco Corp.,* 218 B.R. at 398 (citations omitted).

 First-time transactions between parties may be excepted from a trustee's avoidance powers under § 547(c)(2)'s ordinary course of business exception. *Roberds, Inc. v. Broyhill Furniture (In re Roberds, Inc.),* 315 B.R. 443, 457 (Bankr. S.D. Ohio 2004). In *Gosch v. Burns (In re Finn),* 909 F.2d 903 (6th Cir. 1990), the Sixth Circuit held that

subject to the individual fact-finding powers of the district court in a specific inquiry, a transaction can be in the ordinary course of financial affairs even if it is the first such transaction undertaken by the customer. This rule holds where the transaction would not be out of the ordinary for a person in the borrower's position.

*Id.* at 908. In these situations, some courts "have required the creditor . . . to fill the 'gap' by reference to a more extensive and

exacting analysis of industry standards." *Stanziale v. S. Steel & Supply, LLC (In re Conex Holdings, LLC)*, 518 B.R. 269, 281 (Bankr. D. Del. 2014). When analyzing a first-time transaction, a court must determine "that the transaction was of a type that would not be out of the ordinary for similarly situated parties." *Huffman v. N.J. Steel Corp. (In re Valley Steel Corp.)*, 182 B.R. 728, 735 (Bankr. W.D. Va. 1995) (citing *In re Finn*, 909 F.2d at 908).

Although first-time transactions may be in the ordinary course, the fact that the lender is a relative of the debtor is a more difficult hurdle to overcome. "[T]he mere existence of a family relationship will not establish an ordinary course. Quite to the contrary, family relationships may even suggest motivations for a loan outside the ordinary course of the lender's financial affairs." *Schlant, v. Bartolucci (In re Gawronski)*, 411 B.R. 139, 142 (Bankr. W.D.N.Y.2009). In this type of situation, the lender is required to present "evidence that he extended credit within the ordinary course of his *own* business or financial affairs." *Id.* (emphasis added). Courts in the Sixth Circuit have similarly required a heightened level of proof when the transfers at issue were between family members. In *In re Eckman*, the Bankruptcy Court for the Northern District of Ohio held that

> the existence of a familial relationship between the Debtor and the Defendants, while not constituting an absolute fatal flaw, does not easily lend itself to an ordinary course defense. In this type of situation, a defendant seeking to raise an ordinary course defense, where a family member is involved, needs to offer some proof.

*In re Eckman,* 447 B.R. at 550. The fact that a defendant is not in the business of lending money "to anyone, including family members," can serve as evidence that the debt at issue was not incurred in the ordinary course of business. *Schnittjer v. Pickens (In re Pickens)*, Bankr. No. 06-01120, 2008 WL 63251, at *4 (Bankr. N.D. Iowa Jan. 3, 2008). The fact that a loan between family members is interest-free can also weigh in favor of finding that the transfer was not in the ordinary course of business. *Strauss v. Hollis (In re Matlock)*, 361 B.R. 879, 885 (Bankr. W.D. Mo. 2007).

Although the first-time nature of the loan between the Debtors and the Defendant does not necessarily disqualify the transfers at issue in this case from § 547(c)(2)(A)'s protection, the facts surrounding the transfers do. Section 547(c)(2) not only requires parties to demonstrate that a debt was *paid* in the ordinary course of business, but also that the debt was *incurred* in the ordinary course. *In re Speco Corp.*, 218 B.R. at 398. Subsection (A) of § 547(c)(2) also requires parties to prove that the transfer was in the ordinary course of business for *both* the debtor *and* the transferee. While it is true that Joseph McNabb testified that his ordinary way of doing business was to pay lienholders once his crops were harvested, the Defendant did not present any proof that the Debtors' ordinary course of business was to obtain interest-free crop financing loans. Additionally, the Defendant's testimony clearly demonstrated that she was not in the business of lending money to anyone, least of all the Debtors. Joseph McNabb advised his mother to file the Financing Statement with the Secretary of State only after he learned of the CPS lawsuit. This fact leads the Court to find that the circumstances surrounding the perfection support the conclusion that the transfers at issue in this case did not occur in the ordinary course of business for either the Debtors or the Defendant. Accordingly, the Court finds that the Defendant has not carried her burden of proof under the first prong of § 547(c)(2). As such, the repayment of the $173,950.00 on November 17, 2015, may not be excepted

from the Trustee's avoidance powers pursuant to § 547(c)(2)(A).

### 2. 11 U.S.C. § 547(c)(2)(B)

The transfers at issue in this case may still be excepted from avoidance if the Defendant can prove that the transfers were objectively "made according to ordinary business terms." § 547(c)(2). This prong requires the defendant to present evidence that "a transaction comports with the standards for business conduct within an industry[.]" *In re Carled, Inc.*, 91 F.3d at 813. A court's analysis of this question "is a factual determination." *Id.* The Sixth Circuit has held that " 'ordinary business terms' means that the transaction was not so unusual as to render it an aberration in the relevant industry." *Id.* at 818.

The Defendant did not present any evidence of the standard business conduct within the crop financing industry. The Court is savvy enough to know, however, that crop financing is rarely, if ever, provided to a farmer on interest-free terms. Because the Defendant failed to carry her burden of proof with respect to § 547(c)(2)(B), the Court finds that she is also not entitled to except the repayment of $173,950.00 on November 17, 2015, from the Trustee's avoidance powers.

To some this decision may seem harsh. The Debtor's mother did nothing "wrong" in accepting payments on the loan. However, this is exactly the type of scenario the Bankruptcy Code is designed to prevent: the repayment of some creditors over others without cause. The Bankruptcy Court for the Middle District of Tennessee aptly summed up situations such as these: "This preference towards his mother's obligation, although understandable in human terms, is the type of unusual action that § 547(b) discourages and § 547(c)(2) does not protect." *Waldschmidt v. Sanders (In re Sanders* ), 213 B.R. 324, 334 (Bankr. M.D. Tenn. 1997). Some of the payments made

to the Defendant constitute a preference and therefore, must be avoided.

### C. 11 U.S.C. § 550(a)

Section 550(a) of the Bankruptcy Code provides that a trustee may recover "the property transferred or ... the value of such property" from "the initial transferee of such transfer[.]" 11 U.S.C.A. § 550(a)(1). "As is plain from its text, section 550(a)(1) holds initial transferees strictly liable for any [preferential] transfers they receive." *Taunt v. Hurtado (In re Hurtado* ), 342 F.3d 528, 532 (6th Cir. 2003) (citation omitted). "An initial transferee is one who receives money from a person or entity later in bankruptcy, and has dominion over the funds." *First Nat'l Bank of Barnesville v. Rafoth (In re Baker & Getty Fin. Servs., Inc.)*, 974 F.2d 712, 722 (6th Cir. 1992). In the case at bar, it is undisputed that the Defendant was the initial transferee of the Debtors' repayment of $173,950.00 on November 17, 2015.

Section 550(b)(1) provides that

(b) The trustee may not recover under section (a)(2) of this section from—

(1) a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided[.]

11 U.S.C.A. § 550(b)(1). "Direct transferees of the debtor are not entitled to avail themselves of the good faith defense set forth in § 550(b)(1)." *SKK Liquidation Trust v. Green & Green, LPA (In re Spinnaker Indus., Inc.)*, 328 B.R. 755, 762 (Bankr. S.D. Ohio 2005) (internal citation and punctuation marks omitted). Although the Defendant in this case accepted the transfer in good faith, she may not use § 550(b)(1)'s defense since she was the initial transferee. As a result, the Trustee may recover the $173,950.00 the Debtors transferred to the Defendant on November 17, 2015.

**D. Trustee's Request for Pre- and Post–Judgment Interest and Costs**

 In her avoidance complaint, the Trustee asked for "pre- and post-judgment interest, costs and discretionary costs." (Adv. Pro. No. 16–5110, ECF No. 1). 28 U.S.C. § 1961 requires post-judgment interest on all money judgments in civil cases. "Interest shall be allowed on any money judgment in a civil case recovered in a district court. ... Such interest shall be calculated from the date of the entry of the judgment" until the judgment is satisfied. 28 U.S.C.A. § 1961(a). Section 1961 applies to money judgments in preference actions. *DuVoisin v. Anderson (In re S. Indus. Banking Corp.)*, 87 B.R. 518, 520 (Bankr. M.D. Tenn. 1988).

 A bankruptcy court has "broad discretionary authority" to also award pre-judgment interest. *Dymarkowski v. Savage (In re Hadley )*, 561 B.R. 384, 395 (6th Cir. BAP 2016). As the Bankruptcy Appellate Panel recognized in *In re Hadley*, the

> "[the Bankruptcy] Code does not specify whether the trustee may recover interest and costs in addition to recovering the property or its value. The bankruptcy court should exercise its equitable powers to award the trustee interest and costs when appropriate."

*Id.* (quoting 5 Collier on Bankruptcy ¶ 550.02[3][b] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.)). The Bankruptcy Court for the Eastern District of Tennessee has further explained that "[p]rejudgment interest is not automatically applied but may be granted under § 550(a) in order to make the estate whole." *Jahn v. Genesis Merchant Partners, LP (In re U.S. Ins. Grp. LLC )*, 451 B.R. 437, 446 (Bankr. E.D. Tenn. 2011) (citing *Carrier Corp. v. Buckley (In re Globe Mfg. Corp.)*, 567 F.3d 1291, 1300 (11th Cir.2009)).

 In this case, the Trustee failed to address the issues of pre-judgment interest or costs in her brief or at the trial. She also failed to offer any proof regarding these issues. Because of this, the Court is unable to determine whether she is entitled to either type of award at this time. The Court will deny the Trustee's request for pre-judgment interest and costs without prejudice.

**III. CONCLUSION**

The Trustee in this proceeding has satisfied her burden of proof under the five elements of her 11 U.S.C. § 547(b) preference claim as to (1) the transfer of the security interest in the first four loan disbursements in the total amount of $173,950.00; and (2) the repayment of those four loan disbursements on November 17, 2015, in the total amount of $173,950.00. The Defendant failed to prove that the transfers at issue were excepted from the Trustee's avoidance powers under 11 U.S.C. § 547(c). As such, the Debtors' transfer of the security interest to the Defendant in the first four disbursements of Promissory Note proceeds in the amount of $173,950.00 will be avoided pursuant to 11 U.S.C. § 547(b). The Debtors' November 17, 2015 repayment of $173,950.00 due under the Promissory Note will also be avoided pursuant to 11 U.S.C. § 547(b) and will be recovered under 11 U.S.C. § 550(a). The Trustee will be awarded $173,950.00 plus post-judgment interest calculated in accordance with 28 U.S.C. § 1961(a).

An order will be entered in accordance herewith.

**ORDER GRANTING IN PART TRUSTEE'S COMPLAINT TO AVOID PREFERENTIAL TRANSFERS AND RECOVER VALUE OF SAME PURSUANT TO 11 U.S.C. §§ 547(B) AND 550(A)**

For the reasons set forth in the Court's Memorandum Opinion re: the Chapter 7

348

Trustee's Complaint to Avoid Preferential Transfers and to Recover Amount of Such Transfers, the Trustee's Complaint to Avoid Preferential Transfers pursuant to 11 U.S.C. § 547(b) and to Recover the Value of those Transfers is granted as follows:

1. the Debtors' October 2, 2015 transfer of the security interest in the first four loan disbursements in the total amount of $173,950.00 to the Defendant is **HEREBY AVOIDED**;

2. the Debtors' November 17, 2015 repayment of the first four loan disbursements in the amount of $173,950.00 is **HEREBY AVOIDED**;

3. the Trustee is entitled to **RECOVER** the value of the November 17, 2015 payment from the Defendant in the amount of $173,950.00; and

4. the Trustee is awarded a judgment against the Defendant in the amount of $173,950.00 plus interest calculated in accordance with 28 U.S.C. § 1961(a).

**IT IS SO ORDERED.**